AUTORIDAD DE EDIFICIOS PÚBLICOS, peticionaria, *v.* UNIÓN INDEPENDIENTE DE EMPLEADOS DE LA AUTORIDAD DE EDIFICIOS PÚBLICOS, recurrida.

*Número:* CE-91-310        *Resuelto:* 30 de junio de 1992

984

*Jorge Segarra Olivero*, de *Vázquez Colón, Guzmán, Geigel & Alfaro*, abogado de la parte peticionaria; *Jaime E. Cruz Álvarez*, abogado de la parte recurrida.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

## I

Una sociedad civilizada no puede legitimar ni elevar a rango de virtud la mentira. "La buena fe insufla su espíritu en la celebración, ejecución y extinción de la relación laboral; también en el período precontractual en cuanto al deber de los contratantes de actuar lealmente al darse recíproca información ...." C.A. Tamantini, *El principio general de la buena fe y la ley de contrato de trabajo*, 1989-E Rev. Jur. Arg. La Ley 919, 923–924 (1989).

Osvaldo Vale Babilonia se desempeñó como conserje en la Autoridad de Edificios Públicos (en adelante Autoridad), con carácter de empleado *irregular*, desde el 16 de mayo hasta el 11 de agosto de 1989; como empleado *temporero*, desde el 16 de octubre de 1989 hasta el 19 de enero de 1990, y, en *igual condición*, desde el 1ro de febrero hasta su despido, el 16 de febrero de 1990.

Cada uno de estos episodios de empleo fue autorizado a base de la solicitud que el 9 de mayo de 1989 Vale Babilonia firmó y presentó en la Autoridad. En esa misma fecha, simultáneamente, acompañó un formulario del Estado Libre Asociado titulado "Historial Personal". Finalmente, el 16 de octubre de 1989 presentó en la Autoridad otra solicitud de empleo. Los tres (3) formularios requerían que el solicitante informara si había sido convicto por algún delito.[1]

---

[1] Las solicitudes de empleo contienen el encasillado siguiente:

"¿Ha sido usted acusado y sentenciado por alguna violación de ley que no sea a leyes de Tránsito? Si___ No___. En caso afirmativo, indique fecha, nombre de la corte en que fue ventilado el caso, naturaleza de la ofensa y sentencia final." Apéndice a petición, pág. 79.

El *"Historial Personal"* requiere lo siguiente:

"¿Ha sido convicto de algún delito?———

"¿Ha sido indultado?———

Tanto las solicitudes de empleo[2] como el formulario del Estado Libre Asociado[3] contenían certificaciones sobre la veracidad de la información vertida y claramente advertían que, de ser falsificada, constituiría justa causa para el despido. En los tres formularios Vale Babilonia afirmó y certificó no haber sido convicto de ningún delito.

Posteriormente, la Autoridad realizó una investigación y descubrió que el 28 de noviembre de 1988 Vale Babilonia fue acusado de unos cargos por robo —luego archivados— pero que fue convicto por violación a la Ley de Armas, Arts. 6 y 8 (25 L.P.R.A. secs. 416 y 418), y las sentencias de tres (3) y cinco (5) años, concurrentes entre sí, fueron suspendidas. A raíz de esa investigación, efectivo el 16 de febrero de 1990, lo despidió.[4]

---

"Naturaleza del Indulto
"Absoluto———— Condicional————

"Si ha sido convicto de algún delito, incluya certificación de la sentencia." Apéndice a petición, pág. 83.

[2] "CERTIFICO QUE las declaraciones hechas por mí en esta solicitud *son ciertas y correctas a mi mejor entender, y que han sido hechas de buena fe....*

"Queda entendido que de reclutárseme, *cualquier información falsa que haya dado en esta solicitud constituye justa causa para que se me despida.* La Autoridad queda autorizada a realizar cualquier investigación sobre mi historial personal, profesional, académico, médico, de antecedentes penales, de conducta en la comunidad, financiero y/o de crédito, a través del medio que mejor responda a sus intereses." (Énfasis suplido.) Apéndice a petición, pág. 80-A.

[3] "Por la presente certifico que la información aquí contenida es *exacta y verídica, y que la misma ha sido expuesta sin la intención de desvirtuar los hechos o de cometer fraude.* Tengo conocimiento de que de *descubrirse cualquier falsedad* o fraude en relación con lo por mí firmado, estaré sujeto a las penalidades de multa o encarcelamiento, o ambos, o a *destitución* que, prescribe la Ley de Personal en casos de cualquier persona 'que haya dado falso testimonio en cuanto a cualquier hecho concreto, o que haya realizado o intente realizar engaño o fraude en su solicitud o en sus exámenes o para conseguir elegibilidad o nombramiento'." (Énfasis suplido.) Apéndice a petición, pág. 83-A.

[4] La comunicación cursada dice:
"14 de febrero de 1990
"Sr. Osvaldo Vale Babilonia
"Técnico de Conservación II
"Región de Mayagüez
"Estimado señor Vale:
"La Oficina de Personal y Relaciones Industriales realizó una investigación referente a su solicitud de empleo e historial de personal, encontramos que la informa-

Inconforme, el 27 de febrero de 1990 la Unión Independiente de Empleados de la Autoridad de Edificios Públicos (en adelante la Unión) formuló una querella y solicitó arbitraje bajo la tesis de que el empleado había sido despedido sin justa causa, de forma "arbitraria y caprichosa", en contravención al Art. XXXVI, Sec. 6(I) del Convenio Colectivo, de la Unión Independiente de Empleados de la Autoridad de Edificios Públicos, 1987–1990, San Juan, Puerto Rico. En la vista, ninguna de las partes presentó prueba testifical; la única consistió de varios documentos de la Autoridad.

Oportunamente, el laudo arbitral determinó, como "un hecho incontrovertido que el querellante de autos mintió en su solicitud de empleo en lo relativo a si había sido acusado y sentenciado por alguna violación de ley que no fuese por ley de tránsito; y si había sido convicto de algún delito". Apéndice a petición, pág. 61. Concluyó, además, que "[n]o *condonamos* el acto del empleado. De ningún modo favorecemos que se falsifiquen las solicitudes de empleo. *Concluimos que en este caso el acto es reprobable y amerita una sanción disciplinaria puesto que el querellante repitió el mismo en tres (3) ocasiones*". (Énfasis suplido.) Apéndice a petición, pág. 72. Sin embargo, se dictaminó que la falsificación de la solicitud de empleo no constituía *automáticamente* justa causa para el despido. A juicio del árbitro, no se demostró que: (a) Vale Babilonia hubiese omitido la información con la intención de defraudar; (b) dicha situación hubiese causado daños a la Autoridad, y (c)

---

ción ofrecida relacionada a si usted había sido convicto o había cometi[d]o delito, no era correcta y contrario a la realidad.

*"Esta conducta nos refleja [sic] que usted ha dado información falsa en su solicitud de empleo e historial de personal.* Como se había indicado el suministrar información *falsa* en su solicitud de empleo constituye *justa causa* para el despido.

"Por todo lo anterior, le notificamos que le estamos dando por terminado sus servicios con esta Agencia efectivo el 16 de febrero de 1990.

"De usted no estar conforme con esta determinación podrá querellarse mediante el mecanismo que provee el Convenio Colectivo.

"Atentamente," (Énfasis suplido.) Apéndice a petición, pág. 75.

Vale Babilonia no poseyera las cualidades necesarias para el puesto o que tuviera un pobre récord durante los meses en los que desempeñó su trabajo. El laudo modificó la sanción a una suspensión de empleo y sueldo hasta el 1ro de mayo de 1990.

La Autoridad acudió en revisión ante el Tribunal Superior, Sala de San Juan. Dicho foro confirmó mediante Sentencia de 4 de abril de 1991 (Hon. Antonio L. Corretjer Piquer, Juez). A solicitud de la Autoridad, revisamos.

## II

■ De entrada, examinemos si el foro judicial poseía facultad para revisar el laudo según el convenio colectivo existente. En lo pertinente, su artículo XXXVI, Sec. 7(H) del Convenio Colectivo, *supra*, dispone que el laudo será "conforme a derecho". Ello "significa que el árbitro no puede ignorar las normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y Puerto Rico en el campo de derecho laboral, y que se reputarán persuasivas las decisiones de los tribunales de primera instancia y de agencias administrativas, y los laudos y escritos de reputados árbitros." *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62, 68 (1987).

■ Más allá de ese significado, este requisito —conforme a derecho— allana el camino para la revisión por el foro judicial y la eventual corrección de errores jurídicos. *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 D.P.R. 348, 353 (1985); *J.R.T. v. Securitas, Inc.*, 111 D.P.R. 580, 582 (1981); *S.I.U. de P.R. v. Otis Elevator Co.*, 105 D.P.R. 832, 837 (1977). Tal es la situación en el caso de autos. Aclarado este extremo, evaluemos su juridicidad.

## III

█ En términos generales, el laudo que nos ocupa recogió correctamente la exposición doctrinaria persuasiva de las decisiones judiciales, agencias administrativas y árbitros.

Es un principio establecido en el arbitraje obrero-patronal que la falsificación de una solicitud de empleo de por sí no opera automáticamente como causal de despido. Los árbitros están de acuerdo en que la falsificación de récords de trabajo o solicitudes de empleo justifica una sanción disciplinaria. No obstante, el patrono deberá probar que la falsificación constituyó un acto deliberado con la intención de defraudar. No basta probar que se trató de un descuido u olvido del empleado. Existe también consenso entre los árbitros en cuanto a que un período prolongado de trabajo satisfactorio es impedimento para el despido por falsificación de la solicitud de empleo siempre que los hechos falsificados no sean de tal naturaleza que pongan en peligro las relaciones de empleo presentes y futuras. De hecho, normalmente los patronos no disciplinan a sus empleados meramente por la falsificación en sí de la solicitud de trabajo. Lo hacen siempre y cuando dicho acto afecte de algún modo la relación obrero-patronal o el funcionamiento laboral del trabajador se vea afectado por sus capacidades físicas o mentales.

Destacados tratadistas en el ámbito arbitral han establecido una serie de criterios a considerarse ante un despido por falsificación de solicitud de empleo. Estos son los siguientes:

1. La razón o motivo del solicitante de empleo para cometer la falsificación.

2. Si el solicitante con conocimiento y deliberadamente ocultó la información con el propósito de defraudar al Patrono.

3. Si el empleado tenía conocimiento del alcance de su acto y que de ser descubierto lo disciplinarían.

4. Si el empleado continuó negando el acto o trató de ocultar la información aún después de descubierto.

5. Si el tiempo transcurrido entre la falsificación y el momento en que el Patrono la descubrió (tiempo en que el empleado mantuvo un buen récord de empleo) restó importancia al acto en sí.

6. Si la información omitida descalificaba al empleado por estar relacionada con las cualificaciones y responsabilidades del puesto.

7. Si el solicitante hubiese sido empleado por el Patrono de haber ofrecido la información correcta.

8. Si causó daños al Patrono e intervino con el buen funcionamiento del negocio; y si de haber continuado trabajando la empresa hubiese sufrido daños.

9. La naturaleza de la información omitida. (Escolios omitidos.) Apéndice a petición, págs. 62–63.

Repetimos, merece nuestra aprobación estos criterios; no obstante, aclaramos que no es menester que todos estén presentes y, lógicamente, unos tienen más importancia y valor adjudicativo que otros.

Con esta perspectiva en mente, examinemos si la Autoridad podía exigirle a Vale Babilonia, como aspirante a empleo, que expusiera la verdad; esto es, en lo concerniente a sus circunstancias particulares, que revelara las convicciones penales anteriores, y si el mentir justificó su despido.

## IV

■ Las solicitudes de empleo constituyen el mecanismo común mediante el cual un patrono obtiene directamente del aspirante el conocimiento de sus circunstancias personales, ocupacionales y profesionales. Es una de las maneras efectivas de evaluarlo y diferenciarlo del resto de personas para eventualmente hacerle o no la oferta de empleo de acuerdo con las necesidades patronales. La utilización de este mecanismo lleva ínsita, como premisa elemental, la buena fe: todo patrono tiene derecho a confiar que la información suministrada en una solicitud de empleo es *veraz.* Sólo así puede adoptar la decisión más inteligente y conveniente a sus intereses y, claro está, tomar las medidas de seguridad necesarias. A fin de cuentas, nuestro derecho vigente impone al patrono responsabilidad vicaria por las acciones u omisiones negligentes de sus empleados. El conocimiento previo de las habilidades, destrezas y actitudes va a la par con la conducta laboral y social que ha de esperarse. *De su faz, la mentira en las solicitudes de em-*

*pleo las torna inservibles.* Este principio se extiende tanto al patrono privado como al Gobierno.

■ En este caso el laudo no puede prevalecer; no es conforme a derecho. Como cuestión de principio ético-jurídico, resolvemos que mentir en una solicitud de empleo constituye una falta grave que, en unión a otras circunstancias, puede ser causa válida para el despido. Mentir tiende a destruir la dinámica expuesta y tiene el efecto de penalizar a aquel otro trabajador honesto que, al suministrar verazmente la información, no obtuvo el empleo. Semejante axioma premia y remunera la mentira.[5]

■ Observamos que la Sec. 4.3(3) de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1333(3)), tiene como impedimento para ingresar al servicio público, entre otros, "haber sido convicto por delito grave o por cualquier delito que implique depravación moral", si el candidato no ha sido rehabilitado.

Precisamente Vale Babilonia, para superar el impedimento de ley y ser reclutado, mintió en los tres (3) documentos. Concurren suficientes criterios para sostener su despido. Distinto a la apreciación arbitral, la prueba documental permite razonablemente inferir que sus tres (3) actos fueron deliberados, con intención de defraudar y con pleno conocimiento de sus consecuencias. No podemos ser ingenuos. Los textos de las solicitudes y los formularios que suscribió claramente consignaban la necesidad de que la información fuera veraz y correcta; advertían que de ésta ser falsa constituiría justa causa para el despido.

---

[5] Como afirma el Prof. Giorgio Del Vecchio, "si la falsa aseveración de cualidades o méritos inexistentes tiene por fin y efecto inducir a otros a contraer un determinado vínculo (por ejemplo, una relación de empleo), la mentira se convierte, para quien fue inducido a engaño, en un motivo legítimo de anulación del contrato, sin que queden excluidas consecuencias todavía más graves". (Escolio omitido.) G. del Vecchio, *La obligación jurídica de la verdad especialmente en el proceso civil,* XI Rev. Fac. Der. C. Soc. Montevideo 13, 14 (1960).

El período durante el cual Vale Babilonia estuvo empleado tampoco es factor decisivo. Aquí el empleo duró sólo un total de siete (7) meses.([6]) *Era probatorio.* El transcurso del tiempo no desvaneció la seriedad de las falsías cometidas. Igualmente, no es determinante el buen desempeño en el trabajo. No se trata de un despido por incompetencia o no cumplir con las exigencias del empleo; para ello existen numerosas medidas disciplinarias. Evaluamos unas falsedades, que son ofensas separadas e independientes del rendimiento en el empleo y que acarrean una sanción en particular.([7]) Sobre todo, enfatizamos que se probó que *la razón del despido* fue el engaño y *no* los antecedentes penales.([8])

Tampoco es óbice los argumentos de la Unión en torno a la dificultad de obtener empleo al revelar convicciones anteriores y a la circunstancia de que Vale Babilonia tenía que mantenerse empleado por ser una condición para permanecer en probatoria. Aunque los planteamientos son legítimos, estamos ante un problema multidimensional cuya solución corresponde inicialmente a la Asamblea

---

([6]) Advertimos que la Ley Núm. 108 de 21 de junio de 1968 (34 L.P.R.A. sec. 1731 y ss.) dispone la eliminación de ciertas convicciones del récord penal al transcurrir determinado período de tiempo.

([7]) Para situaciones similares a la de autos, donde se ha sostenido el despido a pesar de que el empleado llevaba algún tiempo trabajando y tenía buen récord de empleo, véanse: *Swanson v. American Manufacturing Company,* 511 S.W.2d 561 (C.A. Texas 1974); *Hosking v. Hollaender Manufacturing Company,* 175 N.E. 201 (C.A. Ohio 1961); *Salt River Project,* 91 L.A. 1193 (1988) (Ross, Árb.); *Huntington Alloys, Inc.,* 74 L.A. 176 (1980) (Katz, Árb.); *Gardner-Denver Co.,* 71 L.A. 1126 (1978) (Dunn, Árb.); *Houdaille Industries, Inc.,* 65 L.A. 797 (s.f.) (Moorhead, Árb.); *Zia Co.,* 52 L.A. 89 (1969) (Cohen, Árb.); *United Engineering & Foundry Co.,* 42 L.A. 323 (1964) (Sherman, Árb.).

([8]) Los casos de *Carter v. Gallagher,* 452 F.2d 315 (8vo Cir. 1971), y *Gregory v. Litton Systems, Inc.,* 316 F. Supp. 401 (C.D. California 1970), invocados por la Unión no son aplicables. Allí, el inquirir sobre arrestos y convicciones anteriores en una solicitud de empleo tuvo un efecto discriminatorio sobre las minorías, les descualificó automáticamente y fue violatorio de la cláusula de igual protección de las leyes de la Constitución federal y la Ley de Derechos Civiles federal. 42 U.S.C. sec. 1981 *et seq.*

En el caso de autos ninguna de las partes ha hecho tal planteamiento. Sobre el tema, véase Anotación, *Consideration of Arrest Record as Unlawful Employment Practice Violative of Title VII of Civil Rights Act of 1964 (42 U.S.C.S. sec. 2000e et seq.),* 33 A.L.R. Fed. 263 (1977).

Legislativa. J.N. Medina Fuentes, *La inconstitucionalidad de la legislación de antecedentes penales de Puerto Rico,* 61 Rev. Jur. U.P.R. 115 (1992). *Sería una anomalía fomentar la mentira como un mecanismo idóneo para proteger a un convicto y propulsar una política de rehabilitación. Dos males definitivamente no constituyen un bien.*

Ahora bien, este aspecto específico no ha sido desatendido por la Asamblea Legislativa. Como dijéramos, impide el ingreso al servicio público el "haber sido convicto por delito grave o por cualquier delito que implique depravación moral" (3 L.P.R.A. sec. 1333(3)), a menos que el aspirante haya sido *"habilitado"*.

Y esa excepción —la habilitación— como medida de vanguardia social la recoge la Ley Núm. 70 de 20 de junio de 1963 (3 L.P.R.A. secs. 556a–556e). Su propósito fundamental es atemperar el rigor de la regla general de que una convicción y sentencia por delito grave constituye un impedimento para ingresar o permanecer en el cargo público. 3 L.P.R.A. sec. 556(8). Como excepción, visualiza la persona a quien se le conceden los beneficios de una sentencia suspendida o libertad bajo palabra. Así, en *Hernández Cruz v. Sria. de Instrucción,* 117 D.P.R. 606 (1986), reconocimos que el empleado convicto, beneficiario de una sentencia suspendida, podía continuar desempeñándose en el cargo hasta que el Director de la Oficina de Personal dispusiera lo contrario (3 L.P.R.A. secs. 556a–556e); es decir, la Ley Núm. 70, *supra,* eliminó el carácter automático del motivo de inhabilidad.

Igual enfoque prevalece sobre aquellas personas que desean ingresar al servicio público. La sola convicción de delito grave o que implique depravación moral no es impedimento *absoluto.* El Art. VI(4) del Reglamento de Personal: Habilitación para el Servicio Público de la Oficina Central de Administración de Personal, 30 de noviembre de 1976, expresamente extiende su cubierta a quienes "se encuen-

tren en Libertad a Prueba o en Libertad Bajo Palabra ...";
claro está —por estar fuera del servicio— tienen que some-
ter una solicitud escrita de habilitación acompañada de
una serie de documentos para decisión del Director de la
Oficina de Personal.

No existe, pues, la anomalía argumentada por la Unión.
No hay que mentir: simplemente la ley exige que el aspi-
rante se someta al procedimiento habilitador.

## V

Finalmente, no podemos arribar a la misma solución de
*Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536 (1979), en que
declaramos nulo un reglamento que proveía el despido
como sanción por mentir para obtener una licencia para
ausentarse brevemente. Salta a la vista que el perjuicio
causado por dicha conducta es significativamente menor al
grave que, de su faz, genera mentir en una solicitud de
empleo.

Vale Babilonia mintió en *tres* (3) ocasiones distintas. Sin
embargo, ingeniosamente nos señala que debido a que
nunca antes fue disciplinado por mentir, se trata de una
sola ofensa y —citando a *Srio. del Trabajo v. I.T.T.*, supra—
aduce que el despido no procedía. No tiene razón. Allí, al
pronunciarnos sobre la Ley Núm. 80 de 30 de mayo de
1976, señalamos:

> [*E*]*l citado estatuto, no excluye de la sanción o despido en
> primera o única ofensa aquella falta cuya intensidad de agravio
> así lo requiera en protección de la buena marcha de la empresa
> y la seguridad de las personas que allí laboran.* Al efecto, luego
> de condensar en los seis apartados del (a) al (f) del Art. 2 las
> causas que justifican el despido, de manera indirecta la ley ad-
> mite la extrema sanción de despido aun en casos de falta única
> para la ofensa aislada de todo concepto de reiteración o curso de
> conducta, si dentro de las circunstancias en que se impone, di-
> cho castigo de separación del empleo no refleja arbitrariedad o
> capricho del patrono. ... *Desviándose aunque de manera cuali-*

*ficada de su premisa esencial de reiteración o persistencia en falta como elemento integrante de justa causa para el despido, la ley considera una sola ofensa o primera falta como tal justa causa si por su gravedad y su potencial de daño pone en riesgo el orden, la seguridad o la eficiencia que constituyen la normalidad operatoria del establecimiento.* (Énfasis suplido.) *Srio. del Trabajo v. I.T.T.*, supra, pág. 543.

Véase, también, *Torres Solano v. P.R.T.C.*, 127 D.P.R. 499 (1990), en el que se sostuvo el despido por una primera ofensa de agresión.

Las graves consecuencias morales, las patentes injusticias y la restricción al derecho de selección del patrono discutidos anteriormente —que afectan en cierto modo la seguridad y eficiencia en el empleo— no permiten otro curso decisorio que resolver que la situación de autos amerita el despido, aun bajo el supuesto teórico (aunque. incorrecto) de que se trata de una primera ofensa.

Por la naturaleza de la ofensa, es poco probable que pueda repetirse. Usualmente se llena una solicitud de empleo. Sólo en el caso de algunos empleos temporeros, como el presente, será necesario llenar más. Bajo la tesis de la Unión, el despido sería prácticamente imposible de no poder efectuarse luego de la primera ofensa. La única sanción disponible sería eliminar a Vale Babilonia de la lista de candidatos elegibles a empleo. Las consecuencias de dicha sanción dependería de que surgieran nuevas plazas. Según ese esquema, las probabilidades de que la ofensa resulte impune son altas. Ciertamente el castigo no guardaría proporción con la magnitud de la ofensa cometida. *Torres Solano v. P.R.T.C.*, supra; *Srio. del Trabajo v. I.T.T.*, supra, pág. 546. "Parece existir al menos un acuerdo tácito de que la disciplina progresiva sólo puede jugar un papel muy limitado. ¿Cómo podría, por ejemplo, justificarse la disciplina progresiva en un caso de deshonestidad en una solicitud de empleo? El acto deshonesto fue finito e incapaz de repetirse." (Traducción nuestra.)

J.R. Redeker, *Discipline: Policies & Procedures*, Washington, D.C., Bureau of National Affairs, 1984, pág. 123.

*Se dictará sentencia revocatoria.*

El Juez Asociado Señor Rebollo López emitió una opinión concurrente. La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton concurrieron con el resultado sin opiniones escritas.

**— O —**

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Concurrimos únicamente con el *resultado* a que llega una mayoría de los integrantes del Tribunal en la Opinión y Sentencia que hoy se emite en el presente caso. Somos del criterio, al igual que la Mayoría, que la *falta,* o conducta, en que incurrió el aquí recurrido Osvaldo Vale Babilonia —mentir en tres (3) ocasiones distintas sobre su récord penal previo, consistente el mismo de delitos graves— es una *"grave"* que amerita la *sanción drástica* del despido.

Lamentablemente, sin embargo, *no* podemos brindarle a la Opinión mayoritaria emitida nuestro voto de conformidad. Ello por razón de que, a nuestra manera de ver las cosas, *la norma hoy implantada por el Tribunal en el campo obrero patronal es una muy rígida e inflexible.*

Esto es, no podemos refrendar con nuestro voto las expresiones del Tribunal a los efectos de que:

> En este caso el laudo no puede prevalecer; no es conforme a derecho. *Como cuestión de principio ético-jurídico, resolvemos que mentir en una solicitud de empleo constituye una falta grave que, en unión a otras circunstancias, puede ser causa válida para el despido.* Mentir tiende a destruir la dinámica expuesta y tiene el efecto de penalizar a aquel otro trabajador honesto que, al suministrar verazmente la información, no ob-

tuvo el empleo. Semejante axioma premia y remunera la mentira. (Énfasis suplido.) Opinión mayoritaria, pág. 991.

Aún en el campo penal, donde se regula la conducta previamente catalogada como criminosa por el legislador, se han estatuido dos grandes clasificaciones, a saber, delitos graves y menos graves, y, dentro de estas clasificaciones, se han establecido gradaciones. Esto es, no todos los delitos graves, y menos graves, conllevan la misma pena o castigo.

¿Cómo es posible, entonces, que este Tribunal, jurisprudencialmente, establezca como *norma general* en el campo obrero patronal que "el mentir en una solicitud de empleo, constituye una falta grave" que tiene como consecuencia la sanción drástica del despido?

*Aceptamos*, repetimos, que el mentir intencionalmente respecto al récord penal —*consistente el mismo en convicciones por delitos graves*— es una falta que justifica dicha drástica sanción. *Rechazamos*, sin embargo, que el mentir, *sobre cualquier circunstancia*, en una solicitud de empleo constituya una *"falta grave"* como "cuestión de principio ético-jurídico ...". En primer lugar, al cumplimentar solicitudes de empleo los solicitantes pueden malinterpretar una pregunta y brindar, en contestación a la misma, una información incorrecta o incompleta que luego puede ser catalogada como una mentira por un patrono deseoso de prescindir de los servicios de un empleado. En segundo lugar, las personas al llenar las referidas solicitudes de empleo innecesariamente pueden mentir sobre su verdadero nombre, su dirección real, su edad verdadera, etc. En la mayor parte de esas ocasiones así lo hacen por entender que ser hija o hijo de fulano de tal, o residir en tal o cual sitio, o tener ésta u otra edad, les puede perjudicar en la obtención del empleo que interesan; esto es, sin intención aviesa alguna.

Ello, sin embargo, *no* puede servir de base —*en todos los*

*casos y como norma general*— para la imposición de la *extrema* sanción del despido. Después de todo, no debe olvidarse que hemos resuelto que el "derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, es un principio inalienable al hombre, preexistente a la más antigua de las constituciones conocidas". Véase *Amy v. Adm. Deporte Hípico*, 116 D.P.R. 414, 421 (1985).

En resumen, meramente concurrimos con la Opinión mayoritaria emitida, *no* porque pretendamos "legitimar [y] elevar a rango de virtud la mentira", *sino* por razón de que somos del criterio que la norma jurisprudencial hoy establecida por el Tribunal es una que, al ser extremadamente rígida y amplia, resulta ser injusta y errónea.