*1163 TEXTO COMPLETO DE LA RESOLUCION
La Puerto Rico Telephone Co. (en adelante PRTC) acude ante este Foro Apelativo para cuestionar la sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, emitida el 30 de septiembre de 2002. Mediante la misma, se confirmó un laudo de arbitraje en el cual se determinó que la suspensión de cinco (5) días del señor Juan Solá no estuvo justificada y se ordenó el pago de los haberes dejados de percibir. La PRTC plantea que la suspensión estaba justificada y que se violó el debido proceso de ley, pues el árbitro que emitió el laudo no fue el mismo que escuchó la prueba testifical.
I
El señor Juan Solá es empleado unionado de la PRTC, desempeñándose como Asistente de Controles Financieros en el Departamento de Operaciones de Tesorería. El señor Solá padece de una condición de migraña por la cual se ha ausentado de su trabajo. El 1 de mayo de 1998, recibió una amonestación escrita, ya que durante el año 1997, se ausentó por treinta (30) días y durante los primeros cuatro (4) meses del año 1998, tenía diez (10) días de ausencia. El 26 de mayo de 1999, el señor Solá fue suspendido por tres (3) días como medida disciplinaria debido a que durante ocho (8) meses del año 1998, acumuló cuarentisiete (47) días de ausencia y para principios del 1999, tenía doce (12) días de ausencia. Transcurridos varios meses de la anterior acción disciplinaria, el 15 de septiembre de 1999, tenía veinte y medio (20.5) días de ausencia. En esta ocasión, la acción disciplinaria fue la suspensión de cinco (5) días que es objeto del presente recurso. El 22 de septiembre de 1999, la Hermandad de Empleados Independientes de la Puerto Rico Telephone Company (en adelante HIETEL), agrupación sindical a la cual pertenece el señor Solá, presentó una querella de arbitraje por considerar injustificada tal suspensión.
Luego del correspondiente procedimiento, la HIETEL solicitó la correspondiente designación de un árbitro. Se seleccionó a la señora Gladys del Rosario Rivera Medina. Las partes sometieron el siguiente acuerdo de sumisión: “Que el árbitro determine si la suspensión impuesta al querellante estuvo o no justificada. De no estarlo, que el árbitro emita el remedio adecuado. ”
Celebrada vista, el 24 de septiembre de 2001, se escuchó la prueba y se recibió la evidencia presentada por las partes. En esta vista, sólo testificó por la PRTC el señor Ramón A. Vega, supervisor del señor Solá. Con dicho testimonio, el caso quedó sometido para su adjudicación final.
Pendiente de adjudicación, el 20 de febrero de 2001, la árbitro Rivera Medina pasó a laborar en otra división del Departamento del Trabajo. Ante el traslado de ésta, las partes seleccionaron como nuevo árbitro al señor Ramón Santiago Fernández. El Negociado de Conciliación y Arbitraje (en adelante NCA) indicó que el nuevo árbitro resolvería la controversia conforme a la prueba presentada ante la anterior árbitro y ,que tendría la facultad de determinar, si fuese necesario, la celebración de vistas adicionales o reunir a las partes para aclarar algún punto en controversia.
El 18 de junio de 2002, el árbitro emitió su laudo sin la celebración de una nueva vista basado en la prueba desfilada ante la anterior árbitro Rivera Medina. Concluyó que las ausencias del señor Solá no fueron viciosas, sino motivadas por su condición de migraña. De la prueba surge que todas las ausencias fueron notificadas y autorizadas por su supervisor inmediato. Que el patrono conocía, desde el año 1997, la condición de salud del empleado y que éstas estaban protegidas por el convenio colectivo firmado por las partes. Además, determinó que estas ausencias fueron cargadas a su licencia por enfermedad, luego de ser acreditadas mediante certificado *1164 médico. Expresó que el convenio colectivo dispone de una serie de licencias que el empleado puede disfrutar y su utilización no puede conllevar medidas disciplinarias. Además, determinó que no quedó probado que dichas ausencias afectaran el buen funcionamiento de la empresa.
Inconforme con el laudo emitido y luego de solicitar infructuosamente determinaciones adicionales de hechos, la PRTC recurrió ante el Tribunal de Primera Instancia para solicitar la revocación del laudo. Imputó al árbitro la comisión de dos errores, a saber: (1) violación al debido proceso de ley por haber sido otro el árbitro que escuchó la prueba; y (2) que el laudo era contrario a derecho y al convenio colectivo. El 30 de septiembre de 2002, el foro recurrido emitió su sentencia. En la misma, concluyó que el árbitro no erró al emitir su laudo, por lo que procedió a confirmarlo.
La PRTC, nuevamente inconforme, recurrió ante este Foro Apelativo mediante el recurso que nos ocupa. Reitera que el laudo no es conforme a derecho y que hubo una violación al debido proceso de ley.
II
El Tribunal Supremo de Puerto Rico ha sostenido consistentemente que los procedimientos de arbitraje y los laudos que se emiten en el campo laboral gozan de una especial deferencia ante los tribunales por constituir el trámite ideal para resolver disputas obrero-patronales de una manera rápida, cómoda, sencilla y menos costosa que el ámbito judicial. J.R.T. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62 (1987); U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 D.P.R. 348 (1985); S.I.U. de P. R. v. Otis Elevator Co., 105 D.P.R. 832 (1977). Como norma general, el laudo de un árbitro es final e inapelable, por lo que no puede litigarse enTos tribunales lo que válidamente se arbitró. J.R.T. v. Caribbean Container Co., 89 D.P.R. 742 (1964).
Un laudo de arbitraje no es una sentencia ni un contrato, pero disfruta de la naturaleza de ambos. Un laudo basado en una sumisión voluntaria sólo puede ser impugnado en casos de: (1) fraude; (2) conducta impropia; (3) falta de debido procedimiento de ley; (4) violación a la política pública; (5) falta de jurisdicción; y (6) que no resuelva las cuestiones en controversia. Condado Plaza Hotel v. Asociación de Empleados, 99 J.T.S. 153, resuelto el 7 de octubre de 1999; J.R.T. v. Otis Elevator, Co. 105 D.P.R. 195 (1976); Colón Molinary v. A.A.A., 103 D.P.R. 143 (1974).
Un laudo no puede anularse por meros errores de criterio, ya sean éstos en cuanto a la ley o en cuanto a los hechos. Colón Molinary v. A.A.A., supra. No obstante, cuando determinada ley dispone que el árbitro debe decidir conforme a derecho o las partes así lo acuerden en el convenio colectivo, o en el acuerdo de sumisión, cualquiera de éstas puede acudir ante el foro judicial a impugnar el laudo emitido, no sólo en cuanto a las causas antes mencionadas, sino para revisar la corrección y validez jurídica del laudo. J.R.T. v. Hato Rey Psychiatric Hosp., supra; U.I.L. de Ponce v. Dest. Serrallés, supra.
Cuando se condiciona la finalidad y obligatoriedad del laudo a que sea conforme a derecho, el árbitro no puede ignorar las normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y de Puerto Rico en el campo laboral y deberá considerar persuasivas las decisiones de los tribunales de primera instancia, de las agencias administrativas, y de los laudos y escritos de reputados árbitros. Aut. de Edif. Púb. v. Unión Indep. Emp. A.E.P., 130 D.P.R. 983 (1992); J.R.T. v. Hato Rey Psychiatric Hosp., supra.
En ese caso, la función del árbitro es análoga a la ejercida por un tribunal de primera instancia, estando él Foro Apelativo facultado para revisar y corregir los errores jurídicos en referencia al derecho aplicable. Condado Plaza Hotel v. Asociación de Empleados, supra.
Ahora, cuando el convenio colectivo nada dice en cuanto a la obligación del árbitro de resolver conforme a derecho, el árbitro podrá declarar cuál es la ley y ningún laudo será anulado por errores de derecho. J.R.T. v. N. Y. & P.R. S/S Co., 69 D.P.R. 782 (1949). Es decir, en ausencia de una disposición en tal sentido en el convenio *1165 colectivo o en una ley, el árbitro tiene autoridad para ignorar las reglas de derecho sustantivo vigentes.
La autoridad de un árbitro emana del convenio colectivo y el acuerdo de sumisión vigente existente entre las partes. Sonic Knitting Industries. v. International Ladies Garent, 106 D.P.R. 557 (1977). Son las partes, quienes en el proceso de negociación, delimitan la facultad del árbitro para resolver las controversias que se le presenten y la manera en que deberá hacerlo. De esto, a su vez, depende la autoridad del tribunal para revisar el laudo arbitral y el alcance de dicha revisión.
La importancia que tiene el convenio colectivo en el campo laboral difícilmente puede ser sobre estimada. El mismo, por lo general, representa el futuro de largas y acaloradas horas de discusión entre el patrono y la portavoz de los reclamos de los empleados de éste. La otorgación y firma de un convenio colectivo representa el triunfo del poder de la negociación sobre la fuerza, de la cordura y la razón sobre la temeridad y la violencia que todos tenemos de vivir en armonía los unos con los otros. En fin, el convenio colectivo promueve la paz y la estabilidad en el campo obrero-patronal. Su validez y eficacia, en consecuencia, debe ser siempre objeto del más entusiasta endoso por parte de los tribunales. U.I.L. de Ponce v. Dest. Serrallés, Inc., supra.
Expuestas las anteriores consideraciones, veamos las controversias ante nos.
III
En primer término resolveremos si el laudo en controversias se ajustó a derecho. El Artículo XXVIU del Convenio Colectivo entre la PRTC y la HIETEL, reconoce el derecho de los empleados cubiertos por éste a acumular licencia por enfermedad.

“Artículo XXVIII

Licencia por Enfermedad

Sección I.

Los empleados cubiertos por este Convenio acumularán Licencia por Enfermedad a razón de uno y un medio (IV2) días laborables por cada mes en que hayan trabajado por lo menos cien (100) horas de labor. Aquellos empleados que trabajen menos de cien (100) horas en el mes, acumularán Licencia por Enfermedad en la proporción que el número de horas que trabajen en el mes es a cien (100) horas; o sea, si trabajan setenta y cinco (75) horas en el mes, acumularán setenta y cinco (75) setenta y cinco por ciento (75%) de uno y un medio (IV2) días laborables a base de un día de labor de ocho (8) horas, es decir, nueve (9) horas de labor.

El período de tiempo en que el empleado cubierto por este Convenio Colectivo, está disfrutando Licencia por Enfermedad o Vacaciones, contará para efectos de este Artículo únicamente como horas trabajadas, una vez se reintegre al trabajo.

[[Image here]]

Sección 4

En caso de tener que faltar al trabajo por cualquier motivo, el empleado lo deberá hacer saber a su Supervisor inmediato dentro de las primeras veinticuatro (24) horas de ausencia.

Sección 5

El empleado que se ausente por enfermedad en exceso de dos (2) días deberá presentar a su Supervisor al 
*1166
reintegrarse a su trabajo un certificado médico en el cual se especifique la fecha de la consulta al médico, diagnóstico y el estimado que haga el médico de los días que debe estar recluido. En caso de que el empleado continúe enfermo por un período mayor de tres (3) días o más, el empleado deberá hacer llegar dicho certificado a su Supervisor dentro de los primeros tres (3) días de ausencia a su trabajo, excepto los casos de fuerza mayor en que deberá hacer llegar dicho certificado en el término más breve posible. El empleado recibirá paga por los beneficios provistos en ese Artículo solamente cuando se cumpla con lo dispuesto en esta Sección.

[[Image here]]
En lo que nos concierne, el Reglamento de Disciplina de la PRTC, invocado por ésta, dispone en la Regla 27 sobre ausencias excesivas, que una primera ofensa conlleva una reprimenda escrita como sanción mínimo y una suspensión de tres (3) días como sanción máxima. En segunda ofensa establece como sanción mínima una suspensión de cinco (5) días y como máxima de quince (15) días. En tercera ofensa impone como sanción el despido del empleado.
La prueba incontrovertida establece como causa para las ausencias en controversia, la condición de migraña que padece el señor Solá. Tampoco existe controversia en que las ausencias fueron notificadas y autorizadas por el supervisor de éste. Por tal razón, luego de ser justificadas, mediante el correspondiente certificado médico, fueron cargadas a su licencia por enfermedad.
A base de lo anterior, es forzoso concluir que durante las ausencias en controversia el señor Solá estuvo enfermo y en tratamiento médico. La causa única de sus ausencias se debió a esa enfermedad y tratamiento, no fueron debido a negligencia de su parte en el desempeño de su cargo, ni a intención formada de él, ni a despreocupación negligente de ausentarse del desempeño de sus obligaciones. Véase, Rodrigo v. Tribunal Superior, 101 D.P.R. 151 (1973); Lebrón v. Junta de Personal, 100 D.P.R. 164 (1971).
En esas circunstancias, las ausencias están protegidas por el convenio colectivo firmado por las partes que autoriza la acumulación de licencia por enfermedad. La actuación de la PRTC de sancionar al señor Solá por sus ausencias justificadas constituye la negación de un derecho por ella reconocido en el convenio colectivo.
Es insostenible la conclusión de la PRTC de que “el hecho de si las ausencias fueron por enfermedad o cualquier otra razón, autorizadas o no por el patrono, resulta irrelevante para propósitos de determinar si se incurrió en ausentismo.” Tal planteamiento es inmeritorio al argumentar como lo hace, la PRTC ignora acuerdos alcanzados en el convenio colectivo mediante la negociación para beneficio de los empleados cuando éstos necesiten recuperarse de una enfermedad o mejorarse de una condición de salud recurrente. En este caso, es evidente que el señor Solá cumplió con las disposiciones del Artículo XXVIII del Convenio Colectivo. No se ausentó durante un término mayor de días a los autorizados, acreditó mediante certificado médico la razón para sus ausencias y también cumplió con el requisito de notificación al supervisor. Si aceptamos como válidos los argumentos de la PRTC, se dejaría sin efecto la intención de las partes de brindar protección a aquellos empleados acogidos a las diferentes licencias reconocidas en el convenio colectivo, como lo son la licencia por enfermedad prolongada, ocupacional, por maternidad, militar y otros. A base de las anteriores consideraciones, resolvemos que el árbitro actuó dentro del limite de su autoridad al determinar que la suspensión de cinco (5) días de empleo y sueldo no estuvo justificada.
La PRTC argumenta, además, que el árbitro no hizo alusión alguna, a lo largo del Laudo, sobre las tardanzas objeto de acción disciplinaria. Hemos examinado con cuidado los autos de este caso, en particular el alegato de la PRTC ante el NCA, la solicitud de revisión del laudo de arbitraje; así como la solicitud de determinaciones adicionales de hechos y la moción de reconsideración presentada ante el foro recurrido y el recurso presentado ante nos. En los referidos escritos, la-PRTC centra sus alegaciones en tomo al patrón de *1167 ausentismo del señor Solá. No sustanció o fundamentó sus alegaciones en cuanto al supuesto patrón de tardanzas. Un alegado error que no es fundamentado o sustanciado no puede ser motivo para revisar, modificar o de alguna manera alterar un laudo o una decisión de un tribunal de instancia. Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996); J.R.T. v. Hato Rey Psychiatric Hosp., supra; Santos Green v. Cruz, 100 D.P.R. 9 (1971).
IV
La PRTC pide, además, que este Foro Apelativo anule el laudo porque fue privado del debido proceso de ley. Se basa en que al laudo fue emitido por un árbitro que no escuchó la pmeba testifical. Surge de los autos que las partes suscribieron el acuerdo de sumisión y se celebró vista evidenciaría en la cual se presentó prueba documental y testifical. El único testigo presentado por la PRTC fue el señor Ramón A. Vega, supervisor inmediato del señor Solá. Al seleccionarse el nuevo árbitro, el Director del NCA dispuso que éste resolvería el caso a base de la prueba recibida por la anterior árbitro y que tendría facultad para determinar si era necesario celebrar alguna reunión o vista adicional para aclarar algún punto en controversia.
El Tribunal Supremo de Puerto Rico ha expresado que la violación del debido proceso de ley es una de las causas de nulidad de un laudo de arbitraje. J.R.T. v. Hato Rey Psychiatric Hosp., supra; Hermandad Unión de Empleados v. F.S.E., 112 D.P.R. 51 (1982); J.R.T. v. Securitas, Inc., 111 D.P.R. 580 (1981); J.R.T. v. Aut. de Comunicaciones, 110 D.P.R. 879 (1981). Se ha resuelto que el requisito fundamental del debido proceso es la concesión de la oportunidad de ser oído. J.R.T. v. A.E.E., 117 D.P.R. 222 (1986). Se ha resuelto, además, que el debido procedimiento de ley requiere que se notifique a la parte y se le conceda la oportunidad de presentar prueba en apoyo de su posición. J.R.T. v. A.E.E., supra. La PRTC tuvo dichas oportunidades.
El Reglamento para el Orden Interno de los Servicios de Arbitraje del NCA provee para que haya una grabación que constituya el récord oficial de los procedimientos. Basado en dicho récord y en las directrices del Director del NCA para se resolviera la querella a base de dichos procedimientos, fue emitido el laudo en controversia. En esas circunstancia se satisface las exigencias del debido procedimiento de ley. Visto que resulta obvio que el árbitro tomó conocimiento de la prueba del récord oficial de los procedimientos llevados acabo ante el NCA al emitir su laudo, la omisión de consignar en el mismo la forma en que advino en conocimiento de la evidencia no constituye un error fatal o perjudicial que conlleve la revocación del laudo. En consecuencia, habiéndose cumplido con el debido proceso de ley, resolvemos que el laudo emitido se ajusta a derecho.
En mérito de lo antes expuesto, resolvemos que es procedente denegar la expedición del auto de certiorari solicitado.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 69
1. El 28 de octubre de 2002, la PRTC radicó una moción solicitando determinaciones adicionales de hechos al amparo de la Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. El Tribunal Supremo de Puerto Rico ha establecido que cuando un Tribunal de Primera Instancia tiene ante su consideración la revisión de un laudo de arbitraje, cuyo trato es análogo al de una revisión administrativa, su rol es el de un foro apelativo. U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 D.P.R. 348 (1985). En los casos en que el Tribunal de Primera Instancia actúe como foro apelativo, dicho tribunal no puede consignar hechos iniciales ni adicionales. U.I.T.I.C.E. v. C.E.A.T., 147 D.P.R. 522 (1999).
En cuanto a la solicitud de reconsideración presentada el 31 de octubre de 2002, se entendió que fue rechazada de *1168 plano al no expresarse el tribunal en cuanto a dicha moción dentro de los diez (10) días de haberse presentado. Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. III.
2. El Reglamento de Disciplina no contiene una definición de lo que constituye ausencias excesivas.