EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramón Miranda Ayala, Sonia Calderón Sostre y la Sociedad Legal de Gananciales que tienen constituida<br><br>    Peticionarios<br><br>            v.<br><br> Hospital San Pablo<br><br>      Recurrido | Certiorari<br><br>2007 TSPR 62<br><br>170 DPR ____ |

Número del Caso: CC-2006-421

Fecha: 29 de marzo de 2007

Tribunal de Apelaciones:

                Región Judicial de Bayamón-Panel VII

Juez Ponente:

                Hon. Rafael L. Martínez Torres

Abogado de la Parte Peticionaria:

                Lcdo. Wilfredo Luciano Quiñones

Abogados de la Parte Recurrida:

                Lcda. Eva Y. Mundo Sagardía
                Lcdo. Juan J. Casillas Ayala

Materia: Discrimen en el Empleo y/o Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Miranda Ayala, Sonia
Calderón Sostre y la Sociedad
Legal de Gananciales que
tienen constituida

    Peticionarios

        vs.

Hospital San Pablo

    Recurrido

CC-2006-421    CERTIORARI

SENTENCIA

San Juan, Puerto Rico, a 29 de marzo de 2007

Ramón Miranda Ayala ––en adelante Miranda Ayala–– trabajó para el Hospital San Pablo desde mayo de 1979 hasta el 18 de octubre de 2004, cuando fue despedido. El 29 de diciembre de 2004 Miranda Ayala, su esposa Sonia Calderón Sostre y la sociedad de bienes gananciales por ambos constituida radicaron, ante la Sala Superior de Bayamón del Tribunal de Primera Instancia, una querella contra el Hospital San Pablo bajo el procedimiento sumario establecido por la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3121 *et seq.* En la misma alegaron que el despido se debió a discrimen "por sus actividades organizativas para la negociación colectiva" y/o por despido injustificado bajo la Ley Núm. 80

de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a-185m.

Oportunamente, el Hospital San Pablo contestó la querella en la que levantó varias defensas afirmativas, entre éstas, que no había incurrido en discrimen y que el despido estuvo justificado porque el querellante había incurrido en conducta impropia, consistente en apropiarse de varias cajas de cerveza pertenecientes al Hospital, y que esta conducta constituía una violación a las normas de conducta establecidas por el Hospital en su Manual de Normas.

I

Miranda Ayala ocupaba el puesto de Técnico de Ropería que pertenecía al Departamento de Servicios Ambientales del Hospital San Pablo. Sus funciones consistían en recoger la ropa sucia de los pisos, las salas de operaciones y las salas de parto, contarlas, empacarlas y llevarlas en unos carritos fuera del Hospital. El Hospital tenía almacenadas varias cajas de cerveza en un cuarto de maquinas. El 10 de octubre de 2004 Miranda Ayala entró aproximadamente dos veces al cuarto de maquinas donde estaban las cervezas y se llevó dos cajas de éstas para su uso personal. Dicho hecho fue filmado por las cámaras de seguridad del Hospital. Miranda Ayala originalmente negó los hechos pero al ser confrontado con el vídeo de seguridad, aceptó los mismos. En dicho vídeo se veía

claramente a Miranda Ayala llevándose las dos cajas del cuarto de máquinas.

Miranda Ayala trabajó 25 años en el Hospital; su expediente de empleo revela que éste había recibido varias advertencias en cuanto a su conducta y disciplina en el empleo. Al revisar el expediente disciplinario encontramos que el empleado había sido suspendido por una semana en el año 1983 por haber ofendido a otra de las empleadas del Hospital. En el 1992, al ser confrontado por mentir en relación con unas ausencias, Miranda Ayala fue advertido de que la próxima vez que se ausentara tenía que ser con certificado médico, y, que si no cumplía con las normas, se le aplicarían normas disciplinarias más severas como el despido. El expediente revela, además, varias "Hojas de Intervención" del Programa de Disciplina Progresiva del Hospital, donde se le llamó la atención a éste por la falta de suplido de sábanas y por incumplimiento con el conteo de ropa de la Sala de Operaciones, entre otras faltas.[1]

---

[1] Las Hojas de Intervención en el expediente son por los siguientes hechos:

En el 1997, se reprendió a Miranda Ayala por frecuentar áreas fuera de su rutina de recogido y entrega de ropa. En esa ocasión se le orientó sobre las normas de conducta que estaba violando; se le repasó la responsabilidad de sus labores y se le advirtió que limitara las interrupciones en sus labores y que de persistir se tomarían otras medidas.

(Continúa . . .)

El 10 de junio de 2005, y luego de celebrada la correspondiente vista, el Tribunal de Primera Instancia emitió sentencia desestimando la querella sin imposición de costas ni honorarios de abogado. En cuanto a la alegación de discrimen sindical, el tribunal se declaró sin jurisdicción por tratarse de un asunto de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo. En cuanto a la alegación de despido injustificado, el tribunal determinó que existió justa causa para el despido.

Inconforme con el dictamen, Miranda Ayala presentó recurso de apelación ante el Tribunal de Apelaciones, el cual confirmó la sentencia apelada. Insatisfecho, Miranda Ayala acudió --mediante recurso de *certiorari*-- ante este Tribunal. Alega que procede revocar la sentencia emitida por el foro apelativo intermedio debido a que dicho foro incidió:

---

En el 2001, Miranda Ayala, en dos ocasiones, respondió de manera irrespetuosa cuando se le cuestionó acerca de la falta de su uniforme completo y por la falta de suplido de sábanas en cuatro pisos del hospital. Por esto se le suspendió de empleo y sueldo por una semana. Se le advirtió que de volver a incurrir en dicha conducta, se le despediría indefinidamente.

En el 2004 "el Sr. Miranda no cumplía con las instrucciones impartidas para el conteo de ropa de Sala de Operaciones. Se verificó el empaque que contenía ropa scrub, hampers bag, sábanas blancas y más de veinticinco sábanas verdes mojadas." Se orientó al Sr. Miranda en relación a las normas de empaque y se le advirtió que de prevalecer esta conducta se tomarían otras medidas disciplinarias.

…al confirmar la Sentencia dictada por el Tribunal de Primera Instancia desestimando la querella radicada al concluir que el despido del peticionario fue justificado a la luz de la totalidad de los hechos de este caso.

Atendida la petición de *certiorari*, el 23 de junio de 2006 le concedimos a la parte demandada recurrida el término de quince (15) días para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones. Dicha parte ha comparecido. Estando en posición de resolver el recurso radicado, procedemos a así hacerlo. Confirmamos; veamos por qué.

II

El Artículo 1 de la Ley Num. 80, ante, establece que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, que sea despedido de su cargo sin que haya mediado justa causa, tendrá derecho a recibir de su patrono una indemnización según dispone la ley. Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643, 648-649 (1994).

La referida Ley dispone en su Artículo 2, en lo aquí pertinente, que se entenderá por justa causa para el despido, entre otras causas, (i) que el obrero siga un patrón de conducta impropia o desordenada; (ii) la actitud del empleado de no rendir su trabajo en forma eficiente o

de hacerlo tardía y negligentemente o en violación de las normas de calidad; (iii) violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. Las instancias antes enumeradas son sólo ejemplos de las posibles causas que constituyen justa causa para el despido.

La Ley 80 no favorece que el patrono despida al empleado como sanción por una primera falta o infracción, salvo cuando por la gravedad y potencial de agravio de la conducta en cuestión se haya puesto en riesgo, el orden, la seguridad o la eficiencia del establecimiento. Rivera v. Pan Pepín, Inc., res. el 21 de abril de 2004, 2004 TSPR 59; Jusino et als. v. Walgreens, 155 D.P.R. 560 (2001); Srio. del Trabajo v. G.P. Inds., Inc., 153 D.P.R. 223 (2001); Delgado Zayas v. Hosp. Int. Med. Avanzada, ante; Srio. del Trabajo v. I.T.T., 108 D.P.R. 536 (1979).

En cuanto al procedimiento a seguir, en una acción por despido injustificado de un empleado, el patrono tiene el peso de la prueba para establecer que el despido estuvo justificado. Todo despido es injustificado hasta tanto el patrono demuestre justa causa para su acción. Una vez que el patrono interpone como defensa afirmativa que ha mediado justa causa para el despido, le corresponde a éste entonces probar, por preponderancia de la prueba, que el

mismo estuvo justificado. Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001), págs. 378-379.

Por otro lado, y en lo pertinente, la Ley dispone que "[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". 29 L.P.R.A. sec. 185b.

En Secretario del Trabajo v. I.T.T., ante, pág. 542, establecimos que:

> "[l]a Ley no pretende ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido. Esa es opción del patrono que puede adoptar reglas y reglamentos razonables que estime necesarios para el buen funcionamiento de la empresa". (Énfasis suplido.)

Ello así que el patrono "tiene derecho a evaluar a su personal, a base de los valores morales y del orden público prevalecientes en Puerto Rico, cuando el cumplimiento o violación de los mismos puede mantener o alterar el buen y normal funcionamiento de la empresa". (Énfasis nuestro.) Secretario del Trabajo v. G.P. Industries Inc., ante.

Por último, debe señalarse que el Hospital San Pablo tiene un Manual de Políticas, Normas y Beneficios, que específicamente indica que la deshonestidad y la apropiación indebida de propiedad ajena, bien sea del

Hospital San Pablo, de un paciente o de un compañero, no será tolerada.

## II

En el caso ante nuestra consideración la parte peticionaria reconoce que fue un error de juicio de su parte apropiarse de dos cajas de cerveza, pero entiende que el castigo impuesto por el patrono es desproporcionado a la falta cometida. Expone dos argumentos en apoyo a su alegación, a saber: 1) que se trata de unas cajas de cerveza que hacía aproximadamente un año que estaban almacenadas en el Hospital y; 2) que todo el personal del Hospital sabía que las cervezas estaban en un lugar donde existe alta temperatura (el cuarto de máquinas), con el propósito de decomisarlas ya que habían perdido su calidad. No le asiste la razón.

El Manual de Normas de Conducta del Hospital establece que la deshonestidad y la apropiación indebida de propiedad ajena no serán toleradas en el lugar de trabajo. Miranda Ayala tenía conocimiento de estas normas de conducta ya que el hospital le había hecho entrega de una copia del manual. Dicho acto evidencia que el empleado era consciente de las posibles repercusiones de sus actos. Esto también lo confirma el testimonio del peticionario en la vista del caso donde expresó: "que si no lo enfrentan con el vídeo lo seguiría negando porque yo sabía, me imaginé que me iban a botar por eso".

No existe controversia en cuanto al hecho de que el peticionario Miranda Ayala incurrió en la conducta de "apropiación indebida de propiedad del Hospital", al llevarse a su casa dos cajas de cerveza. Aunque al principio lo negó, al ser confrontado con un vídeo que reflejaba la acción, lo admitió. "No podía negarlo, estaba en el vídeo", expresó en una deposición.

La acción del peticionario violó las normas de conducta del Hospital e incluso podría constituir conducta delictiva. La única defensa del peticionario es que las cervezas estaban dañadas e iban a ser decomisadas. Esto no lo sabía el peticionario cuando llevó a cabo la acción, pues trató de consumirlas.[2] Incluso, parece que el Hospital no se había percatado que las cervezas estaban "dañadas", porque al darse cuenta que las cajas de cerveza que tenían almacenadas estaban desapareciendo, establecieron un sistema de vigilancia electrónica para detectar quién o quiénes estaban sustrayendo las cajas de cerveza de un área controlada.

La Guía Revisada para la Aplicación de la Ley Núm. 80 dispone, al interpretar la disposición del Artículo 2 de la referida Ley, que:

> "en circunstancias especiales, ciertos actos aislados pueden revestir tal seriedad que pueden

---

[2] Durante la vista del caso, el peticionario declaró, en síntesis, que tenía duda si las cervezas estaban buenas o malas. Si estaban buenas se las tomaba. Puso un "paquetito" a enfriar, para probar si estaban buenas. Como estaban malas, las botó.

dar base al despido justificado ya que pueden poner de manifiesto una clara e indubitable condición de carácter, que por la gravedad de las consecuencias que hayan acarreado o que puedan acarrear, o por revelar, de por sí, una actitud no susceptible de cambio, ponen de relieve, desde ese momento, aquella configuración del carácter que el legislador sabiamente exigió, como norma general, que no se dejase depender en su apreciación de un acto aislado del empleado". Departamento del Trabajo y Recursos Humanos, Guía Revisada para la Aplicación de la Ley Núm. 80, Pág. 32 (2000).

Incluso, no resulta necesario incluir en un reglamento o manual de disciplina ciertas normas cuya violación constituye falta mayor. "…[U]na persona de inteligencia normal tiene que saber que asesinar a otro empleado en el lugar de trabajo, agredir físicamente al patrono sin razón alguna que justifique este hecho, **hurtar mercancía del patrono**… constituyen <u>faltas mayores o graves</u> que <u>no</u> debe incurrir nunca". (Énfasis nuestro.) A. Acevedo Colom, <u>Legislación Protectora del Trabajo Comentada</u>, 7ma ed., 2001, San Juan, pág. 138.

En <u>Autoridad de Edificios Públicos</u> v. <u>Unión Independiente de Empleados</u>, 130 D.P.R. 983 (1992), este Tribunal resolvió que mentir en una solicitud de empleo en cuanto a previos delitos cometidos constituye una falta grave, que puede ser válida para el despido. En dicho caso expresamos que el mentir tiende a destruir la dinámica con el empleado y afecta el buen funcionamiento de la empresa. Este acto, similar al que presenta el caso de autos, es un

acto de deshonestidad el cual denota una ausencia de valor moral.[3]

Miranda Ayala alega que los hechos del presente caso se asemejan a los hechos de los casos de Secretario del Trabajo v. I.T.T., ante y Rivera Torres v. Pan Pepín, ante. Entiende que, al igual que lo resuelto en los casos antes mencionados, su falta no justifica el despido por una primera ofensa. No le asiste la razón; un análisis de los referidos casos demuestra que los mismos son distinguibles del presente caso.[4]

---

[3] Los árbitros tienen las facultades de analizar las penalidades impuestas a los empleados que están gobernados por convenios colectivos. Las ofensas extremadamente serias, como robo, persistentemente rehusarse a obedecer órdenes legítimas, etc., justifican un despido sin la necesidad de advertencias previas o tratar de corregir la disciplina. En este tipo de ofensas los árbitros confirman los despidos por estas circunstancias. (Énfasis nuestro.) A. Miles Ruben, How Arbitration Works, BNA Books, Washington D.C., 6th Edition, 2003, pág. 964-967.

[4] En Secretario del Trabajo v. I.T.T., ante, un empleado luego de trabajar 17 años para la compañía fue despedido por haber mentido con el propósito de obtener una licencia para ausentarse de su trabajo. El reglamento de I.T.T. contenía una disposición que castigaba con el despido inmediato por una mentira hacia el patrono. Este Tribunal determinó que el castigo era muy severo para una primera ofensa por existir en el reglamento otras ofensas mucho más graves las cuales requerían la comisión de tres ofensas antes del despido. En el caso ante nos no hay duda de que la ofensa es grave y el reglamento es claro al disponer que no será tolerada la apropiación de propiedad ajena de parte de un empleado.

Por otro lado, en Rivera Torres v. Pan Pepín, ante, se despidió a un empleado por violar una falta catalogada como grave en el Manual de Normas del Empleado, la cual consistía en no retirar mercancía expirada de las góndolas de uno de los comercios. Se determinó que el despido no fue justificado debido a que la norma no disponía
(Continúa . . .)

Debido a la gravedad de la falta cometida por Miranda Ayala el Hospital correctamente decidió prescindir de sus servicios; sobre todo cuando consideramos que, en relación con anteriores infracciones, el Hospital le había advertido a Miranda Ayala que podía ser objeto de sanciones mayores, incluso despedido.

En fin, la actuación del empleado violó las normas razonables del Hospital y refleja una actitud y un detalle de su carácter lesivo a la ordenada marcha del mismo. No existen vicios de arbitrariedad en la decisión tomada por el Hospital.

IV

Por los fundamentos antes expresados, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones, en vista del hecho de la existencia de justa causa para el despido.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión de Conformidad a la cual se unió el Juez Presidente señor Hernández Denton. El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente.

_____

expresamente que el incurrir en la conducta proscrita conllevaría como sanción el despido. En la situación de hechos hoy ante nuestra consideración, repetimos, el manual especifica que la conducta de apropiación de material ajeno no será tolerada. El manual es claro y específicamente dispone que la honestidad de los empleados es un elemento de la conducta esencial para el patrono.

La Juez Asociada señora Fiol Matta disintió sin opinión escrita.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Miranda Ayala, Sonia
Calderón Sostre y la Sociedad
Legal de Gananciales que
tienen constituida

    Peticionarios                       CC-2006-421
    CERTIORARI

        vs.

Hospital San Pablo

    Recurrido

OPINIÓN DE CONFORMIDAD EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ A LA CUAL SE UNE EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 29 de marzo de 2007

Suscribimos, totalmente, la correcta y bien fundamentada Sentencia que emite el Tribunal en el presente caso. Sin embargo, hemos considerado procedente expresarnos por separado ante la errónea Opinión disidente que se emite, la cual, de no ser refutada, puede causar confusión a nivel de instancia y en mentes impresionables.

La Opinión disidente emitida pretende dar la impresión de que el Tribunal, al avalar el despido decretado, comete una injusticia en vista de que el despido decretado "fue una medida disciplinaria extrema, que no guarda proporción alguna con la falta cometida,…"; que la mercancía

hurtada tenía poco valor y estaba próxima a ser decomisada; que "aun aquellos que a veces se comportan truhanamente merecen …" protección para poderse ganar la vida y sostener a su familia; y que el decreto mayoritario le da peso a algunas faltas de poca importancia cometidas anteriormente por el empleado por encima del hecho de que dicho empleado llevaba trabajando veinticinco años en el hospital recurrido y que éste estaba activamente inmerso en actividades laborales protegidas constitucionalmente. (Énfasis suplido y en el original.)

De entrada, debe señalarse que nuestro ordenamiento jurídico no protege a los ciudadanos deshonestos, esto es, no le brinda protección a los ladrones. Por el contrario, en el presente caso de lo que se trata es de una de las acciones u ofensas más serias en que puede incurrir un empleado, esto es, hurtar de su patrono. Este acto es indicativo de falta de lealtad y ausencia de los más fundamentales valores morales de parte del empleado, conducta que el patrono tiene derecho a catalogar en un manual de empleados --como aquí se hizo-- como una falta grave que tiene como consecuencia el despido del empleado.

Por otro lado, resulta importante enfatizar que no importa que la mercancía que se hurte tenga un valor mínimo. Lo verdaderamente importante es si el empleado cometió, o no, el hurto. Si bien es cierto que una persona puede estar en un momento determinado más o menos intoxicado, dependiendo del número de tragos que haya

ingerido, una persona no puede ser más o menos honesta. Ello debido a que la honestidad es una característica inherente del ser humano. En otras palabras, uno es honesto o no lo es. Ello no depende del número de objetos que se hurte ni del valor de los mismos.

De otra parte, la conducta en que había incurrido el empleado con anterioridad al día en que hurtó la mercancía en controversia --la cual la Opinión disidente sorprendentemente cataloga como "faltas de poca importancia"-- fortalecen y justifican la decisión del patrono de despedir al empleado. Recordemos que éste había sido objeto de varias advertencias relativas a su conducta anterior en el empleo, tales como: incurrir en conducta ofensiva con una compañera empleada, la cual le costó una semana de suspensión en el empleo; mentir sobre las razones que tuvo para ausentarse del empleo --lo cual demuestra falta de honestidad-- siendo advertido que por próximas infracciones podría ser despedido; y negligencia en el desempeño de sus deberes, relativa a la "falta de suplido de sábanas" y por incumplimiento con el conteo correcto de ropa de la Sala de Operaciones del Hospital.

Juzgamos el caso, no a base de especulaciones como se hace en la Opinión disidente --al expresar que, quizás, el patrono despidió al empleado por sus actividades laborales o por no continuar pagándole los salarios altos que ganaba éste-- sino a base de los hechos incontrovertidos del caso, cuales son: el empleado, en efecto, cometió el hurto;

primeramente negó la comisión del mismo y luego la aceptó al ser confrontado con un video que grabó lo ocurrido; y, como si lo antes expuesto fuera poco, expresó dicho empleado que lo hubiera seguido negando si no hubiera existido el video.

Ante ese cuadro de hechos, demostrativo de deshonestidad en su máxima expresión, ¿se puede sancionar a un patrono por despedir al empleado?; ¿hay necesidad de especular sobre la razón para el despido, más allá de lo expresado?

Realmente no alcanzamos a comprender como se puede argumentar que en el presente caso no hubo justa causa para el despido realizado, independientemente de los años que el empleado llevara trabajando en el Hospital. Este Tribunal no puede convertirse en el protector de empleados truhanes e indeseables en alegada protección del derecho a ganarse la vida y sostener a su familia; el que así lo interese debe saber que tiene que comportase como una persona honesta, honrada y trabajadora. Esos sí son los que merecen nuestra protección.


                    FRANCISCO REBOLLO LÓPEZ
                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ramón Miranda Ayala; Sonia
Calderón Sostre y la Sociedad
Legal de Gananciales que
tienen constituida

        Peticionarios

                                        CC-2006-421

Certiorari
        vs.


Hospital San Pablo

        Recurrido


Opinión Disidente emitida por el Juez Asociado señor FUSTER
BERLINGERI.


        San Juan, Puerto Rico, a 29 de marzo de 2007.


> *"The Law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread."*
> **Anatole France**
> **Premio Nobel de Literatura (1921)**

        Los hechos esenciales del caso de autos son sencillos. Un empleado **que llevaba trabajando 25 años** en el hospital recurrido, se apropió de dos cajas de cervezas que pertenecían al mencionado patrono. Las dos cajas de cervezas aludidas **habían estado almacenadas por espacio de un año en el cuarto de máquinas del hospital**, un lugar muy caluroso y poco propicio para mantener su

calidad. La razón por la cual se encontraban almacenadas allí era que el hospital tenía **el evidente propósito de decomisarlas**; es decir, que la gerencia del hospital las consideraba **mercancía inservible**. El propio empleado que se adueñó de las cervezas en cuestión no conocía si éstas podían consumirse o si estaban dañadas. Dicho empleado era **un obrero involucrado en actividades organizativas para la negociación colectiva**. Por el acto de apropiación referido fue despedido de su empleo.

Mediante una sentencia, la mayoría del Tribunal convalida el despido referido. El decreto mayoritario le da gran peso a unas faltas del empleado **cometidas hacía quince y diecinueve años atrás**, incluso algunas de poca importancia como la de no haberse presentado a trabajar debidamente vestido con un uniforme. La mayoría evidentemente quiere proyectar la impresión de que se trata de una persona, en su juicio, menospreciable, para así intentar justificar la drástica sanción en cuestión. Lo que la mayoría **no hace** es darle el valor que merecen **otros factores claramente pertinentes, que sirven de contrapeso a la decisión patronal de despedir al empleado en cuestión**, tales como: (1) que el trabajador en cuestión tenía gran antigüedad en la empresa hospitalaria; (2) que las dos cajas de cerveza aludidas no sólo no tenían valor real alguno, sino que, para todos los efectos prácticos, se encontraban abandonadas por el hospital; (3) que el trabajador estaba activamente inmerso en actividades laborales protegidas constitucionalmente, que

probablemente no eran del agrado del patrono. **El análisis que la mayoría hace de los hechos de este caso, pues, dista mucho de ser objetivo e imparcial**. **Tampoco es un análisis completo de todo lo que es pertinente**.

A la luz de los tres factores medulares antes mencionados, **que la mayoría del Tribunal descarta totalmente**, a mi me parece claro que el despido del trabajador que aquí nos concierne **fue una medida disciplinaria extrema**, que no guarda proporción alguna con la falta cometida, y que levanta al menos la sospecha de un posible discrimen sindical. Para sopesar la falta cometida en relación a la sanción que procede, es inevitable tener en mente la probabilidad de que el patrono aquí, **que evidentemente no tenía ningún interés real en las cervezas dañadas**, haya usado el acto imprudente de su empleado como excusa para despedirlo. **Me parece innegable que ningún patrono de ordinario despide fulminantemente un empleado que lleva trabajando 25 años en la empresa por el hecho de que se haya apropiado de una mercancía inservible y abandonada**. Mucho más probable es que el motivo real del despido sea para sustituirlo con un nuevo empleado de la misma categoría, que no sea un activista laboral y al que no haya que pagarle los salarios más altos acrecentados durante 25 años de servicio. Esa es una realidad sobre el modo de proceder de algunos patronos, que es muy bien conocida por los versados en los asuntos laborales, y si una mayoría de

este Tribunal no la quiere reconocer aquí es porque su visión patronal de la realidad se lo impide.

Es cierto que el propósito real del despido no es un hecho que hubiese sido adjudicado aun cuando este caso llegó ante nos. Ello no nos permite repudiar totalmente el abuso patronal, **como habría que hacerlo si constara concretamente ya la represalia aludida**. Pero el propósito real del despido es un aspecto de este caso, que podemos atisbar basándonos no sólo en la amplia experiencia que tenemos en estos asuntos, sino sobre todo derivado lógicamente de la evidente falta de razonabilidad del despido en cuestión, mediante el cual se impone la sanción más extrema por un acto que no constituyó daño material real alguno contra el patrono. Al ponderar qué sanción amerita la acción en cuestión del trabajador, me parece necesario tomar en cuenta la realidad completa del asunto ante nos, fundamentados en la experiencia y la lógica, como lo hacen cotidianamente los tribunales en otras partes del mundo, y como lo hemos hecho nosotros mismos tantas veces. Véase, B. Cardozo, *The Nature of the Judicial Process* (New Haven: Yale Univ. Press, 1962). De cualquier modo, irrespectivamente del **motivo** del patrono, el hecho innegable y medular aquí es que se privó a un empleado de 25 años de servicio de su modo de ganarse la vida, sólo por haber cometido un acto imprudente, de muy poca monta material, si alguna.

En mi criterio, el modo de ganarse la vida de las personas y de sostener a su familia merece más protección

que la que la mayoría de este Tribunal evidentemente está dispuesta a concederle. Se trata de una finalidad que ha sido reconocida como **un derecho humano fundamental** en el Art. 23 de la Declaración Universal de Derechos Humanos de las Naciones Unidas y por la reputada encíclica *Laborem Exercens*. Nuestra propia Ley 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185(a) *et seq.* lo reconoce, aunque con limitaciones. Véase, Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763 (1992). Aun aquéllos que a veces se comportan truhanamente merecen la protección aludida. Nuestra autoridad no puede estar siempre sólo a favor de lo institucional, del agraciado, o del sano.

En resumen, entiendo que el empleado en cuestión debió ser sancionado por el incidente de las cervezas mediante alguna suspensión breve de empleo y sueldo, pero no con la sanción extrema de la destitución. Sencillamente, no creo que sea de modo alguno razonable que se prive a un trabajador del medio de ganarse la vida, por haberse apropiado de una mercancía inservible y abandonada por el patrono. No hay proporción válida alguna entre la falta y la sanción. Si el patrono quería salir del obrero en cuestión, tenía que pagarle la mesada correspondiente que dispone la ley.

Es lamentable que una mayoría de este ilustre Foro estime que sólo las personas perfectamente íntegras merecen su protección. Son visiones elitistas como ésta las que inspiraron las palabras del gran Anatole France citadas al

comienzo de esta opinión. Tal visión no sólo no encuentra eco alguno en la Carta de Derechos de nuestra ley fundamental, sino tampoco en ninguna de las teorías fundamentales que prevalecen en nuestros días sobre lo que es el Derecho, y lo que es la justicia. Véase, Edgar Bodenheimer, ***Treatise on Justice*** (New York: Philosophical Library, 1967). Ciertamente no encuentra ningún apoyo en la Ley 80 citada antes. En ningún lugar de esa legislación, aun limitada como es, se dispone que sólo protege a los obreros que sean perfectamente íntegros.

La mayoría apadrina hoy una visión de la reglamentación obrero patronal que no sólo carece de toda fundamentación jurídica, sino que ominosamente puede propiciar graves desarrollos en las relaciones obrero-patronales y en la búsqueda de la paz laboral. Tal insólita visión tendría el inconmensurable efecto de convertir en **desvalidos ante la Ley** a la inmensa mayoría de los trabajadores que alguna vez han cometido una falta u otra. Tendría asimismo la incomprensible incongruencia de concedernos a los meros mortales que somos los Jueces la labor de sólo extender la protección de la ley a los seres perfectos.

Como no comparto ninguno de tales dislates, ni la injusticia intrínseca del despido en este caso, yo disiento.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO