Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ANTONIO ALFONSO CORA ROSARIO<br><br>Apelante<br><br><br>v.<br><br><br>E.G.B. FUNERARIA ANAYA, CORP.<br><br>Apelado | KLAN202400904 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso número: GM2024CV00020<br><br>Sobre: Despido Injustificado; Procedimiento Sumario |

Panel integrado por su presidente, el juez Adames Soto, la juez Aldebol Mora y la juez Martínez Cordero.[1]

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de mayo de 2025.

Comparece ante nos Antonio Alfonso Cora Rosario (Cora Rosario o parte apelante) mediante el presente recurso de *Apelación Civil* y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, el 26 de septiembre de 2024. En el referido dictamen, el foro de origen declaró No Ha Lugar la *Querella* presentada por Cora Rosario y desestimó la acción en su totalidad, con perjuicio.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

## I

El 14 de enero de 2024, Cora Rosario incoó una *Querella* sobre despido injustificado contra E.G.B. Funeraria Anaya Corp. (Funeraria Anaya o parte apelada) acogiéndose al procedimiento

---

[1] Mediante Orden Administrativa OATA-2025-070 de 9 de mayo de 2025, se designó a la Hon. Beatriz M. Martínez Cordero para entender y votar en el caso de título, en sustitución del Hon. Abelardo Bermúdez Torres.

sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, mejor conocida como la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, 32 LPRA sec. 3118.[2] En el aludido escrito, alegó que trabajó por tiempo indeterminado para la Funeraria Anaya desde el 25 de junio de 2010 hasta el 6 de septiembre de 2023. Adujó que el referido periodo incluía patronos sucesores. Del mismo modo, arguyó que durante el periodo de trabajo realizaba las siguientes tareas para la Funeraria Anaya: (1) recoger muertos en diferentes hospitales de Puerto Rico; (2) llevar los cuerpos de los occisos a Medicina Legal o Ciencias Forenses en el municipio de San Juan; (3) llevar a los fallecidos a embalsamar y recogerlos; (4) organizar los servicios prestados en la funeraria; (5) dar mantenimiento a los vehículos de la Funeraria Anaya; (6) limpiar el patio; (7) reciclar productos; entre otros.

Adujo que el salario devengado por este en el año 2023 y hasta la fecha de su despido fue el siguiente:

Enero-$1,318.00; febrero-$2,755.00; marzo-$2,815.00; abril-$1,790.00; mayo-$2,465.00; junio-$2,600.00; julio-$100.00; agosto-$245.00 y septiembre-$90.00.

De la misma forma, alegó que durante el tiempo que laboró en la Funeraria Anaya, trabajó de manera satisfactoria. Arguyó que fue despedido sin justa causa y que no se le entregó una carta explicando la razón de su despido.

El 4 de febrero de 2024 Cora Rosario presentó una *Moción para que se Anote la Rebeldía*.[3] En la misma, alegó que la Funeraria Anaya fue emplazada el 23 de enero de 2024, y que solicitó una prórroga para contestar la *Querella* sin juramentar, en contravención a los requisitos establecidos en la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, supra. Por tal

---

[2] Apéndice del recurso, págs. 9-10.
[3] Tomamos conocimiento judicial de la Entrada Núm. 7 del Caso Núm. GM2024CV00020 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

razón, le solicitó al foro primario que le anotara la rebeldía a la Funeraria Anaya, se dieran por admitidos los hechos correctamente alegados y se señalara una vista para aquellos hechos que requirieran la presentación de prueba.

Así las cosas, el 5 de febrero de 2024 el Tribunal de Primera Instancia emitió una *Orden* en la cual le anotó la rebeldía a la Funeraria Anaya.[4]

Luego de algunos incidentes procesales, el 26 de febrero de 2024 el foro de instancia emitió una *Sentencia Parcial*.[5] En el mencionado dictamen, el foro de origen dispuso lo siguiente:

> Por consiguiente, se da[n] por admitidas las alegaciones de la demanda y se dicta Sentencia Parcial en rebeldía declarando con lugar la querella presentada por la Parte Querellante bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a-185m. Se mantiene el juicio en rebeldía, señalado para el 29 de febrero de 2024 a las 2:00 p.m., a los únicos efectos de que la Parte Querellante presente los salarios devengados durante el término de tres años previos al despido. De esta forma, y de conformidad con las disposiciones de los Art. 4 y 7 de la Ley Núm. 80, el Tribunal estará en condiciones de emitir una sentencia final para establecer la indemnización que le corresponde recibir a la Parte Querellada. Véase 29 LPRA 185d y 185g.
>
> A tenor con la Regla 42.3 de Procedimiento Civil, supra, se dicta Sentencia Parcial por no existir razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito.

Tras algunos trámites procesales, incluyendo la presentación de un recurso ante nos por parte de la Funeraria Anaya[6] y la celebración de una vista en rebeldía el 24 de septiembre de 2024, el Tribunal de Primera Instancia emitió una *Sentencia* el 26 de septiembre de 2024.[7] En el referido dictamen, el foro *a quo* dejó sin efecto la *Sentencia Parcial* emitida el 26 de febrero de 2024 y declaró No Ha Lugar la *Querella,* desestimándola en su totalidad, con

---

[4] Tomamos conocimiento judicial de la Entrada Núm. 12 del Caso Núm. GM2024CV00020 en SUMAC.

[5] Apéndice del recurso, págs. 16-21.

[6] Tomamos conocimiento judicial de la *Sentencia* emitida por esta curia el 16 de mayo de 2024 en el caso **KLAN202400230**, en la cual se desestimó el recurso instado por falta de jurisdicción.

[7] Apéndice del recurso, págs. 1-8.

perjuicio. El foro primario emitió las siguientes determinaciones de hechos:

1) La Administradora de la parte querellada era Elba Nydia González Berríos, hermana del propietario de la funeraria.

2) Todos los viernes, el querellante hacía entrega a la Administradora de una "nómina", la cual titulaba reporte.

3) Dicho reporte era preparado por el querellante y contenía un detalle de los trabajos y/o tareas realizadas por éste durante dicha semana, junto a la cuantía que cobraba por cada uno de ellos.

4) La parte querellada le pagaba al querellante todos los viernes en efectivo.

5) El querellado le pagaba al querellante a base del reporte entregado por este último.

6) Las sumas cobradas por el querellante dependían del tipo de trabajo a ser realizado y/o la distancia a la que tenía que ser transportado un difunto.

7) El querellado le pagó al querellante las siguientes sumas de dinero desde el 1 de septiembre de 2020 hasta el 31 de diciembre de 2022:

2020
    Septiembre – $1,656.00
    Octubre – $1,680.75
    Noviembre – $867.99
    Diciembre - $1,242.87

2021
    Enero – $1,745.50
    Febrero – $1,494.75
    Marzo – $1,087.50
    Abril – $1,627.99
    Mayo – $1,443.50
    Junio – $1,609.50
    Julio – $1,999.00
    Agosto – $1,983.00
    Septiembre – $1,465.00
    Octubre – $1,488.80
    Noviembre – $645.00
    Diciembre – $1,462.25

2022
    Enero – $1,782.00
    Febrero – $2,008.00
    Marzo – $2,133.00
    Abril – $1,052.00
    Mayo – $1,380.00
    Junio – $2,444.00
    Julio – $2,157.00
    Agosto – $ 2,930.00
    Septiembre – $2,139.00

Octubre – $1,986.00
Noviembre – $1,749.00
Diciembre – $3,009.00

8) La paga recibida por el querellante variaba cada semana ya que lo facturado por éste dependía de las encomiendas recibidas durante dicho periodo de tiempo.

9) En ocasiones el querellante tenía que contratar otras personas para que lo ayudaran con algunos difuntos.

10) El querellante era quien le pagaba a estas terceras personas y le facturaba por dicho gasto al querellado.[8]

El TPI razonó que la *Querella* presentada por Cora Rosario se limitaba a alegar que trabajó por tiempo indeterminado para la Funeraria Anaya, sin especificar la naturaleza de su trabajo. Es decir, el foro primario entendió que Cora Rosario no especificó en su reclamación si trabajó en capacidad de empleado, contratista independiente, servicios profesionales, empleo temporero o empleo a término para la Funeraria Anaya.

Por otro lado, luego de escuchar el testimonio presentado por el apelante, así como evaluar los elementos para distinguir entre empleado y contratista independiente, el Tribunal de Primera Instancia quedó convencido de que Cora Rosario prestaba servicios a la Funeraria Anaya como contratista independiente. Por tal razón, resolvió que Cora Rosario no cumplía con la definición de empleado establecida en la Ley Núm. 80 de 30 de mayo de 1976, mejor conocida como la *Ley sobre Despidos Injustificados*, 29 LPRA sec. 185a, declarando así No Ha Lugar la *Querella* presentada por este y desestimando la misma en su totalidad, con perjuicio.

Inconforme, el 4 de octubre de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló la comisión de los siguientes errores:

---

[8] Apéndice del recurso, págs. 3-5.

1. Incidió el Tribunal de Primera Instancia al no permitir la identificación y autenticación de las nóminas elaboradas o preparadas por el querellante apelante y, por lo tanto, no admitir las mismas en evidencia tal como fueron por él autenticadas, de conformidad con la Regla 901 de las Reglas de Evidencia y la normativa que regula ese procedimiento.

2. Incurrió en error manifiesto el Tribunal de Primera Instancia al concluir que el querellante apelante era un contratista independiente en la relación obrero patronal existente entre [e]ste y la parte querellada apelada, ello contrario a los criterios desarrollados por la jurisprudencia puertorriqueña y los hechos que tuvo ante sí. Sobre todo porque en la Sentencia Parcial ya se había concluido, mediante hechos bien alegados, que el querellante había sido contratado por tiempo indeterminado, mediante un salario y que fue despedido sin justa causa.

3. Cometió error manifiesto el Tribunal de Primera Instancia en la apreciación de la prueba que tuvo ante sí y como consecuencia desestimar la querella instada, sin considerar que la parte querellada tenía el peso de la prueba de derrotar la presunción del despido injustificado alegado por el querellante apelante. *Rivera Figueroa v. The Fuller Brush,* 180 DPR 894 (2011).

Posteriormente, el 18 de febrero de 2025, la parte apelante presentó un *Alegato Suplementario*. Por su parte, el 12 de marzo de 2025 la parte apelada compareció ante nos mediante el *Alegato Responsivo*.

Con el beneficio de la comparecencia de las partes, así como con la exposición narrativa de la prueba oral, procedemos a resolver.

**I**

**A**

La *Ley Sobre Despidos Injustificados*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80-1976), tiene el propósito de proteger a la persona empleada de actuaciones arbitrarias del patrono e imponer remedios económicos que desalienten la práctica de despedir a las personas empleadas injustificadamente. *Ruiz Mattei v. Commercial Equipment Finance, Inc.*, 2024 TSPR 68, resuelto el 21 de junio de 2024; *González Méndez v. Acción Social et al.*, 196 DPR 213, 229 (2016);

*SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 929 (2015). Dicha política pública se sustenta en que el trabajo tiene una función social trascendental, tanto en el ámbito individual como en el colectivo. A esta realidad responde la afirmación de que el trabajo tiene un profundo significado ético, porque mediante este la persona aporta al bien común y se autorrealiza.

Las protecciones conferidas por la Ley Núm. 80-1976, *supra,* se extienden a toda persona empleada que: (1) trabaja para un patrono mediante remuneración; (2) haya sido contratada sin tiempo determinado, y (3) sea despedida sin que mediara una justa causa. 29 LPRA sec. 185a. Presentes estas circunstancias, la persona empleada, así despedida, tiene derecho a recibir de su patrono el pago de una indemnización, típicamente denominada como la *mesada,* cuya cuantía dependerá de la duración del empleo y del sueldo que devengaba. *Íd.*; *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 230 (2015); *Whittenburg v. Col. Ntra. Sra. Del Carmen,* 182 DPR 937, 950 (2011). Por tal razón, es importante destacar que "el estándar de justa causa es el requisito requerido en la mayoría de los países del mundo para convalidar las acciones de los empleadores. Si el patrono despide injustificadamente a un trabajador estaría entonces sujeto a la sanción económica que impone el estatuto protector". C. Zeno Santiago, *El Despido y la Política Social en Nuestro Estado de Derecho,* 34 Rev. Jur. UIPR 213, 217 (2000).

Ahora bien, nuestro ordenamiento jurídico no prohíbe absolutamente el despido de una persona empleada; más bien, castiga el despido sin justa causa. *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 982 (2022); *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 904 (2011). En ese sentido, la Ley Núm. 80-1976, *supra,* considera injustificado el despido que se hace por mero capricho del patrono, y no guarda relación con la necesidad de

asegurar el buen y normal funcionamiento de un establecimiento. 29 LPRA sec. 185b; *León Torres v. Rivera Lebrón*, 204 DPR 20, 38 (2020).

Cónsono con lo anterior, el Artículo 2 de la Ley Núm. 80-1976, 29 LPRA sec. 185b, instituye posibles situaciones en las cuales existe justa causa para el despido. En particular, desglosa las siguientes circunstancias:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. [...]

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

[...]

Según lo precitado, la Ley Núm. 80-1976, *supra,* no establece específicamente qué constituye un despido injustificado, pero desglosa varios escenarios o circunstancias que liberan al patrono de responsabilidad. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 983; *Indulac v. Unión*, 207 DPR 279, 298 (2021). Algunas de estas circunstancias están basadas en conducta atribuible a la persona empleada, mientras que otras responden al curso decisorio de la gerencia empresarial. *Íd.* En ese sentido, las circunstancias constitutivas de justa causa, según previamente esbozados,

constituyen meros ejemplos de situaciones asociadas a un despido. *Indulac v. Unión*, supra, pág. 299. Por lo tanto, el precitado estatuto no prevé el universo de incidencias que puedan surgir en un entorno laboral y que desemboquen en la cesantía de una persona empleada. *Íd.*

Es decir, el citado Artículo 2 de la Ley Núm. 80-1976, *supra*, no dispone una lista taxativa de las circunstancias que pueden dar lugar a un despido por justa causa. *Indulac v. Unión*, supra, pág. 299. Ello obedece a que el mencionado estatuto no favorece el despido como sanción a la primera falta cometida por una persona empleada. *Íd.*, págs. 299-300, citando a *Srio. del Trabajo v. I.T.T.*, 108 DPR 536, 542-543 (1979). Sin embargo, la referida norma no es una absoluta. *Íd.*, pág. 300. El Tribunal Supremo de Puerto Rico ha resuelto que existen circunstancias en las que una sola ofensa o primera falta pudieran justificar un despido. *Íd.* Así, pues, este curso de acción podría considerarse justificado si dicha acción u omisión, por su gravedad y potencial de agravio, pone en riesgo la seguridad, el orden y la eficiencia que constituye el funcionamiento de la empresa. *Íd.*

Cónsono con lo anterior, al amparo de la Ley Núm. 80-1976, *supra,* se ha reconocido que una sola ofensa puede constituir justa causa para el despido. *Indulac v. Unión*, supra. Ahora bien, dicha falta debe ser de tal seriedad o naturaleza que revele una actitud o un detalle del carácter de la persona empleada, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarla del establecimiento. *Íd.*; *Rivera v. Pan Pepín*, 161 DPR 681, 690 (2004); *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643 (1994); *Aut. Edif. Púb. v. Unión Indep. Emp. A.E.P.,* 130 DPR 983, 994 (1992). De modo que lo esencial es que, del agravio perpetrado por la persona empleada ponga de manifiesto una condición, que dentro del contexto del empleo sea inaceptable

o intolerable, independientemente de que se trate de una primera falta. *Íd.*, págs. 300-301; *Torres Solano v. P.R.T.C.,* 127 DPR 499, 516 (1990).

Para que opere la protección brindada bajo este estatuto, es imperativo que la persona que fue despedida sea un *empleado*. El Artículo 14e de la Ley Núm. 80-1976, 29 LPRA sec. 185n(e), define *empleado* como toda persona que trabaja para un patrono, y que reciba compensación por sus servicios. Esta definición no incluye a "contratistas independientes, empleados gubernamentales, empleados cubiertos por un convenio colectivo vigente, ni empleados que laboran bajo un contrato de empleo temporero por término o proyecto". *Íd.*

Contrario a la figura de *empleado*, un contratista independiente es aquella persona que debido a la naturaleza de su función y la forma en que presta servicios, resulta ser su propio patrono. *Romero et als. v. Cabrer Roig et als.,* 191 DPR 643, 659 (2014). En ocasiones una persona puede poseer rasgos híbridos tanto de un empleado como de un contratista independiente. Por tal razón, el Tribunal Supremo ha expresado que es posible llegar a una distinción categórica entre un empleado y un contratista independiente mediante la aplicación de una serie de criterios para distinguir entre ambos, estos son:

> (1) Naturaleza, extensión y grado de control que ejerce el patrono sobre la persona en la ejecución de la obra o trabajo;
>
> (2) Grado de juicio o iniciativa que despliega la persona;
>
> (3) Forma de compensación;
>
> (4) Facultad de emplear y derecho de despedir obreros;
>
> (5) Oportunidad de incurrir en ganancias y el riesgo de pérdidas;
>
> (6) La titularidad del equipo y de las instalaciones físicas provistas por el principal;
>
> (7) Retención de contribuciones;

(8) Si, como cuestión de realidad económica, la persona que presta el servicio depende de la empresa para la cual trabaja;

(9) Permanencia de la relación de trabajo; y

(10) Si los servicios prestados son una parte integral del negocio del principal o se pueden considerar como un negocio separado o independiente por sí mismos.

La determinación de si se es un contratista independiente no dependerá de alguno de los factores antes expuesto de manera aislada, sino que hay que revisar las circunstancias que rodean la relación laboral. *Romero et als. v. Cabrer Roig et als.*, supra pág. 660. Por tal razón, el Tribunal Supremo ha expresado que para determinar si una persona es un contratista independiente "no necesariamente será suficiente con que se cumpla uno de los criterios, como tampoco es necesario que se cumplan todos". *Íd.* pág. 661.

**B**

Sabido es que la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2-1961), establece un procedimiento de naturaleza sumario para aquellos casos que versen sobre reclamaciones de una persona obrera o empleada en contra de su patrono, referentes a cualquier derecho o beneficio, o cualquier suma por concepto de compensación por trabajo o labor realizados, o en ocasión a un despido de su empleo sin justa causa, todo en aras de abreviar los trámites pertinentes a las mismas, de manera que resulte en un proceso menos oneroso para la persona trabajadora. 32 LPRA sec. 3118; *Peña Lacern v. Martínez Hernández et al.*, 210 DPR 425 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 164 (2021); *León Torres v. Rivera Lebrón*, supra; *Ruiz Camilo v. Trafon Group*, Inc., 200 DPR 254 (2018). Su alcance se extiende a varios estatutos laborales, entre estos, las querellas sobre salarios, beneficios y derechos laborales. *Ruiz*

*Camilo v. Trafon Group, Inc.*, supra, pág. 265. La naturaleza de esta reclamación exige celeridad en su trámite para, así, cumplir con el fin legislativo de proteger el empleo, desalentar los despidos injustificados y proveer a la persona obrera despedida suficientes recursos económicos entre un empleo y otro. *León Torres v. Rivera Lebrón*, supra. A su vez, el Tribunal Supremo de Puerto Rico ha enfatizado que las disposiciones de la pieza legislativa antes mencionada se deberán interpretar de manera liberal a favor de la persona empleada. Ello, para equiparar la desigualdad de los medios económicos que exista entre las partes. *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 928-929 (2008).

Cónsono con lo anterior, la Sección 3 de la Ley Núm. 2-1961, 32 LPRA sec. 3120, establece, en lo pertinente, que en los casos tramitados con arreglo a dicho estatuto "se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido por esta ley". *Díaz Santiago v. PUCPR et al.*, 207 DPR 339, 348 (2021). Es decir, se recurrirá a las Reglas de Procedimiento Civil, 32 LPRA Ap. V, cuando estas no contravengan lo dispuesto en la Ley Núm. 2-1961, *supra*, o prolonguen innecesariamente el carácter sumario del procedimiento. *Íd.*

**C**

La evidencia demostrativa es aquella evidencia que es perceptible a los sentidos. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, Ed. SITUM, 2015, pág. 609. La Regla 1101 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 1101, establece que:

> Siempre que un objeto perceptible a los sentidos resultare pertinente de conformidad a lo dispuesto en la Regla 401, dicho objeto, **previa identificación o autenticación**, es admisible como prueba, sujeto ello a la discreción del Tribunal de conformidad con los

factores o criterios establecidos en la Regla 403. (énfasis nuestro).

El Tribunal Supremo ha expresado que existen dos tipos de evidencia demostrativa: la real y la ilustrativa. *Pueblo v. Nazario Hernández*, 138 DPR 760, 774 (1995). La evidencia demostrativa real es aquella evidencia que "juega un papel central y directo en el asunto que sea objeto de la controversia". *Íd.* Mientras que la evidencia demostrativa ilustrativa se enfoca en "enseñar, instruir, representar o hacer más comprensible un testimonio u otra evidencia". *Íd.*

Para que esta evidencia demostrativa sea admisible, debe cumplir con el procedimiento establecido en las Reglas de Evidencia de Puerto Rico. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 811 (2020). Por lo que, en primera instancia, toda evidencia que se pretenda presentar en la corte debe ser pertinente. *Íd.* La Regla 401 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 401, establece que la evidencia pertinente es aquella que tiende a hacer la existencia de un hecho, con consecuencias para la adjudicación de la acción, más probable o menos probable de lo que sería sin tal evidencia.

Luego de demostrar que la evidencia demostrativa es pertinente, esta tiene que cumplir con el procedimiento de autenticación para que sea admitida. *Rosado Reyes v. Global Healthcare*, supra. pág. 812. El procedimiento de identificación o autenticación de evidencia demostrativa está regulado en la Regla 901 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 901. En específico, la referida regla establece que el requisito de autenticación o identificación de evidencia se satisface mediante la presentación de evidencia suficiente para sostener una determinación de que el objeto en cuestión es lo que la persona promovente sostiene que es. *Íd.* En el inciso b de la Regla 901, *supra*, se enumeran algunos ejemplos de cómo realizar la

autenticación o identificación de un objeto, entre estos: (1) el testimonio por testigo con conocimiento; (2) autenticación mediante evidencia de la letra; (3) identificación de voz; (4) conversaciones telefónicas; (5) escritos antiguos o compilación de datos; (6) escritos en contestación; (7) contenido de escritos; (8) autenticación mediante admisión; (9) testamento; (10) características distintivas; entre otros.

**D**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR

194, 219 (2021), citando a *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín,* supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.,* pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.,* 212 DPR 758 (2023); *Pueblo v. Hernández Doble,* 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.,* supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín,* supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado,* 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante

alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Sobre ese particular, nuestro Tribunal Supremo ha reiterado que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo v. Pérez Delgado*, supra. Véase, *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011). De esa manera, los abogados y las abogadas tienen la obligación de cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. *Íd.* No puede quedar al arbitrio de la representación legal decidir qué disposiciones reglamentarias aplican y cuándo. *Íd.* Por tanto, es tarea de la parte peticionaria presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo. Íd.*

### E

En nuestro ordenamiento jurídico los derechos y obligaciones adjudicados mediante un dictamen judicial, que advengan final y firme, constituyen la ley del caso. *Cacho Pérez v. Hatton Gotay y otros,* 195 DPR 1, 8 (2016). Como norma general, las controversias que han sido adjudicadas por el foro de instancia o un foro apelativo no pueden rexaminarse, pues los derechos y las obligaciones adjudicadas gozan de una finalidad o firmeza que ayudan a las partes de un pleito a tener unas directrices confiables y certeras. *Íd.* pág. 9. Las determinaciones judiciales que constituyen la ley del caso "incluyen todas aquellas cuestiones finales consideradas y decididas por el tribunal". *Íd.* Estas determinaciones, como norma general, obligan tanto al foro de instancia como a el que las dictó, si este vuelve a su consideración. *Félix v. Las Haciendas,* 165 DPR 832, 843 (2005).

No obstante, el Tribunal Supremo ha reconocido instancias excepcionales en las cuales no se utilizará la doctrina de la ley del caso. En específico el Tribunal Supremo ha expresado que:

> …si el caso vuelve ante la consideración del tribunal y este entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, ese foro puede aplicar una norma de derecho distinta. *Cacho Pérez v. Hatton Gotay y otros,* supra. pág. 9.

Aunque esta doctrina responde al principio de que las adjudicaciones deben tener un fin, el Tribunal Supremo ha reconocido que cuando se presenta un atentado contra la justicia, los tribunales pueden descartar la aplicación de la ley del caso. *Íd.* pág.10.

**F**

En nuestro ordenamiento jurídico, en o fuera de las Reglas de Evidencia de Puerto Rico, "no [se] exige determinada forma para establecer un hecho". *Santiago Torres v. Pérez López,* 174 DPR 241, 245 (2008). No obstante, cuando "para probar un hecho se descanse en el contenido de un escrito, éste se debe presentar para constatar su contenido". *Íd.* pág. 244. Esto es conocido como la regla de la mejor evidencia. En la Regla 1002 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R.1002, se establece que, para probar el contenido de un escrito, grabación o fotografía se requiere la presentación del original.

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

En su primer señalamiento de error, la parte apelante arguye que el foro de origen incidió al no permitir la identificación y autenticación de las nóminas preparadas por este, y al no admitir las mismas en evidencia tal como fueron por él autenticadas, de conformidad con la Regla 901 de las Reglas de Evidencia y la normativa que regula ese procedimiento. No le asiste razón. Veamos.

En nuestro ordenamiento jurídico, previo a la admisión de evidencia demostrativa, esta debe ser autenticada conforme a lo dispuesto en la Regla 901 de Evidencia de Puerto Rico, *supra*. Es decir, su admisibilidad está condicionada a que la parte promovente, mediante la presentación de evidencia suficiente, sostenga una determinación de que el objeto en cuestión es lo que la persona promovente sostiene que es. Por otro lado, la regla de la mejor evidencia establece que, cuando para probar un hecho se descanse en el contenido de un escrito, se debe presentar el original para constatar su contenido.

En el caso ante nos, la parte apelante pretendía presentar en evidencia una serie de documentos que contenían un resumen de las nóminas de dinero que recibía por el trabajo que realizó para el apelado.[9] Estos documentos fueron alegadamente confeccionados por el propio apelante.[10] Pero su presentación fue objetada por la parte apelada por diferentes fundamentos, entre ellos, alegaron que se pretendía presentar un resumen, en vez de los documentos originales, en contravención de la regla de la mejor evidencia para probar el ingreso recibido por el apelante durante la alegada relación laboral con el apelado.[11]

Luego de revisar la *Exposición Narrativa* y la normativa antes expuesta, concluimos que no incidió el foro sentenciador al no permitir la presentación y autenticación de los resúmenes de las nóminas de dinero realizados por el apelante, pues según la regla de la mejor evidencia, el apelante debió haber traído las nóminas originales para probar el ingreso recibido por este durante la alegada relación laboral con el apelado.

---

[9] Véase, Exposición Narrativa, págs. 1-9.
[10] *Íd.*
[11] *Íd.*

Como segundo señalamiento de error, la parte apelante nos plantea que el Tribunal de Primera Instancia incidió al concluir que este era un contratista independiente en la relación obrero patronal existente con la parte apelada, ello contrario a los criterios desarrollados por la jurisprudencia puertorriqueña y los hechos que tuvo ante sí. En particular, cuando en la *Sentencia Parcial* ya se había concluido, mediante hechos bien alegados, que el apelante había sido contratado por tiempo indeterminado, mediante un salario y que fue despedido sin justa causa. Del mismo modo, en su tercer señalamiento de error, la parte apelante señala que el foro de origen erró en la apreciación de la prueba que tuvo ante sí y como consecuencia desestimó la *Querella*, sin considerar que la parte apelada tenía el peso de la prueba de derrotar la presunción del despido injustificado alegado por el apelante. Por estar relacionados entre sí, se discutirán de manera conjunta.

Es norma reiterada en nuestro ordenamiento jurídico, que no se favorece la intervención de los Foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto.

La doctrina de la ley del caso establece que los derechos y obligaciones adjudicados mediante un dictamen judicial, que advengan final y firme, constituyen la ley del caso. Las determinaciones judiciales que constituyen la ley del caso incluyen todas aquellas cuestiones finales consideradas y decididas por el tribunal. No obstante, el Tribunal Supremo ha expresado que los tribunales pueden optar por obviar la ley del caso, si este entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, permitiéndole a este Foro aplicar una norma de derecho distinta.

Por otro lado, un contratista independiente es aquella persona que debido a la naturaleza de su función y la forma en la presta sus servicios, es considerada su propio patrono. Mientras que un empleado, según definido por el Artículo 14e de la *Ley de Indemnización por Despido Injustificado,* supra, es toda persona que trabaja para un patrono, y reciba compensación por sus servicios. Conforme esta definición, no se incluyen "contratistas independientes, empleados gubernamentales, empleados cubiertos por un convenio colectivo vigente, ni empleados que laboran bajo un contrato de empleo temporero por término o proyecto".

En el caso ante nuestra consideración, la parte apelante alega que fue despedido sin justa causa por la parte apelada. No obstante, surge de la *Exposición Narrativa* de la vista celebrada el 24 de septiembre de 2024, la *Sentencia,* la prueba que obra en autos y los escritos presentados por las partes, que la relación habida entre la parte apelante y la parte apelada era una de contratista independiente y un cliente.

Según surge de la evidencia presentada en el foro primario, todos los viernes el apelante hacía entrega a la parte apelada de una "nómina", preparada por este, que contenía los trabajos o tareas que realizaba durante una semana.[12] La parte apelada le pagaba al apelante a base del reporte entregado por este último.[13] Del mismo modo, el pago que recibía el apelante variaba cada semana, ya que lo facturado por éste dependía de las encomiendas recibidas durante dicho periodo de tiempo.[14] Por último, en ocasiones el apelante tenía que contratar otras personas para que lo ayudaran con algunos difuntos y la compensación por la ayuda era pagada por el apelante, quien le facturaba por dicho gasto al apelado.[15]

---

[12] Véase, Exposición Narrativa, págs. 1, 15, 18.
[13] *Íd.*
[14] *Íd.* págs. 10-25.
[15] *Íd.* págs. 23-24.

Con este cuadro fáctico, colegimos, al igual que lo hizo el Tribunal de Primera Instancia, que el apelante prestaba servicios al apelado como contratista independiente. Esto es así, pues de un examen sosegado, aplicando los criterios esbozados por el Tribunal Supremo para distinguir entre un empleado y un contratista independiente, la parte apelante era su propio patrono. Coincidimos, del mismo modo, con el Tribunal de Primera Instancia en que la *Querella* presentada por la parte apelante no logró establecer que era empleado de la parte apelada, sino se limitó a alegar que trabajó por tiempo indeterminado para la parte apelada, sin especificar la naturaleza de su trabajo.

Debido a que la parte apelante no era empleado de la parte apelada, no tenía una causa acción bajo la Ley Núm. 80-1976, supra. Por ende, procedía dejar sin efecto la *Sentencia Parcial* emitida el 26 de febrero de 2024 y la desestimación de la *Querella.* En consecuencia, no erró el Tribunal de Primera Instancia al desestimar la causa de acción de la parte apelante con perjuicio.

**IV**

Por los fundamentos que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones